1   BENJAMIN A. EMMERT, Bar No. 212157
    LITTLER MENDELSON, P.C.
2   50 West San Fernando Street, 7th Floor
    San Jose, CA 95113.2303
3   Telephone: 408.998.4150
    Fax No.: 408.288.5686
4   E-mail: bemmert@littler.com

5   DOUGLAS A. WICKHAM, Bar No. 127268
    HELEN BRAGINSKY, Bar No. 282359
6   LITTLER MENDELSON, P.C.
    633 West Fifth Street, 63rd Fl.
7   Los Angeles, California 90071.3541
    Telephone: 213.443.4300
8   Fax No.: 213.443.4299
    E-mail: dwickham@littler.com
9   E-mail: hbraginsky@littler.com

10   Attorneys for Plaintiff
    JLT SPECIALTY INSURANCE SERVICES INC.
11

12

13               UNITED STATES DISTRICT COURT

14             NORTHERN DISTRICT OF CALIFORNIA

15                SAN FRANCISCO DIVISION

| JLT SPECIALTY INSURANCE SERVICES INC., a Delaware corporation, | Case No. 3:19-cv-02427 |
|---|---|
| Plaintiff, | **PLAINTIFF'S MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF APPLICATION FOR TEMPORARY RESTRAINING ORDER, ORDER TO SHOW CAUSE WHY PRELIMINARY INJUNCTION SHOULD NOT BE ISSUED AND FOR EXPEDITED DISCOVERY** |
| v. | |
| GARY PESTANA, an individual; SARAH SHERMAN, an individual; DUSTIN SMITH, an individual; and RAMY MORCOS, an individual, | Date: May 13, 2019<br>Time: TBD<br>Dept.: TBD |
| Defendants. | Complaint Filed: May 3, 2019<br>Trial Date: Not Set |

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

**TABLE OF CONTENTS**

**PAGE**

I.    INTRODUCTION ............................................................................... 1

II.   FACTUAL BACKGROUND ................................................................ 2

III.  LEGAL ARGUMENT ......................................................................... 11

    A.    JLT Has Met The Requirements For A Temporary Restraining Order. .................. 11

        1.    JLT is Likely To Prevail On The Merits Of Its Trade Secret Misappropriation And Breach Of Contract Claims Against Defendants....... 12

            a.    JLT Has Established It Is Likely To Prevail On Its Breach Of Contract Claim. ................................................................ 12

            b.    JLT Has Established It Is Likely To Prevail On Its Trade Secret Misappropriation Theory. .................................................. 13

                (1)    JLT Has Established It's Information Constitutes A Protectable Trade Secret. ........................................... 13

                    (a)    JLT Information Has Independent Economic Value. ................................................................ 13

                    (b)    JLT Took Reasonable Means To Protect It's Trade Secret Information. ................................. 14

                (2)    JLT Presented Substantial Evidence Defendants Had Misappropriated Its Trade Secret Information....................... 14

        2.    JLT Will Suffer Irreparable Injury Unless Defendants Unlawful Acts Are Enjoined. .................................................... 15

        3.    JLT Has Established The Balance Of Equities Weighs In Favor Of Granting Injunctive Relief. ....................................... 16

        4.    Granting The Requested Relief Is In The Public Interest. ............................. 16

    B.    An Evidence Preservation Order Should be Issued and Limited Expedited Discovery Should be Allowed. .................................................. 17

        1.    An Evidence Preservation Order Is Warranted........................................... 17

        2.    Limited Expedited Discovery Should Be Allowed........................................ 17

IV.   CONCLUSION........................................................................................ 18

# TABLE OF AUTHORITIES

**PAGE(S)**

**Cases**

*Abba Rubber Co. v. Seaquist*
(1991) 235 Cal.App.3d 1 .................................................................................................14

*By-Buk Co. v. Printed Cellophane Tape Co.,*
163 Cal. App. 2d 157 (1958) ..........................................................................................12

*Cabo Distributing Cor., Inc. v. Brady,*
821 F.Supp. 582 (N.D. Cal. 1992).................................................................................15

*Campbell Soup Co., v. ConAgra, Inc.,*
977 F.2d 86 (3rd Cir. 1992) ...........................................................................................15

*Central Valley Hospital v. Smith,*
162 Cal.App.4th 501 .......................................................................................................13

*Compass Bank v. Hartley,*
40 F.Supp.2d 973 (D. Ariz. 2006) ..................................................................................15

*Courtesy Temporary Serv., Inc. v. Camacho*
(1990) 222 Cal.App.3d 1278 ..........................................................................................14

*DVD Copy Control Ass'n., Inc. v. Bunner*
(2004) 116 Cal.App.4th 241 ...........................................................................................14

*Ernest & Ernest v. Carlson,*
247 Cal.App.2d 125 (1966) ............................................................................................15

*Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers,*
415 U.S. 42 (1974)..........................................................................................................11

*Henry Schein, Inc. v. Cook,*
191 F.Supp.3d 1072 (N.D. Cal. 2016) ............................................................................16

*Hollingsworth Solderless Terminal Co. v. Turley,*
622 F.2d 1324 (9th Cir. 1980) ........................................................................................12

*Imi-Tech Corp. v. Gagliani,*
691 F. Supp. 214 (S.D.Cal. 1986) ..................................................................................13

*MAI Systems Corp. v. Peak Computer, Inc.*
(9th Cir. 1993) 991 F.2d 511 ..........................................................................................14

*Morlife, Inc. v. Perry*
(1997) 56 Cal.App.4th, 1514 ..........................................................................................14

ii.

Case No. 3:19-cv-02427

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

*North Atlantic Intruments, Inc. v. Haber,*
   188 F.3d 38 (2d Cir. 1999) ...................................................................................... 15

*Pod-Ners, LLC, v. Northern Feed & Bean Of Lucerne Ltd. Liability Co.,*
   204 F.R.D. 675 (D.Colorado 2002) ......................................................................... 18

*San Jose Constr., Inc. v. SBCC, Inc.,*
   155 Cal.App.4th 1528 (2007) ................................................................................... 14

*Semitool, Inc., v. Tokyo Electron America, Inc.,*
   208 F.R.D. 273 (N.D.Cal. 2002) ......................................................................... 17, 18

*Sierra On-Line, Inc. v. Phoenix Software, Inc.,*
   739 F.2d 1415 (9th Cir. 1984) ................................................................................. 11

*Silvestri v. General Motors Corp.,*
   271 F.3d 583 (4th Cir. 2001) ................................................................................... 17

*Thomson v. United States Dep't of Housing and Urban Dev.,*
   219 F.R.D. 93 (D.Md. 2003) ................................................................................... 17

*U.S. v. Nutricology,*
   Inc., 982 F.2d 394 (9th Cir. 1992) ........................................................................... 15

*Winter v. National Resources Defense Council., Inc.,*
   555 U.S. 7 (2008) ..................................................................................................... 12

*Winters v. Textron, Inc.,*
   187 F.R.D. 518 (M.D.Pa. 1999) .............................................................................. 17

**Statutes**

18 U.S.C. §1839(3) .......................................................................................................... 13

18 U.S.C. §1839(5) .......................................................................................................... 13

18 U.S.C. § 1839(6) ................................................................................................... 14, 15

18 U.S.C. § (b)(3) ............................................................................................................ 13

Cal. Civ. Code § 3425.2(a) .............................................................................................. 13

Cal. Civ. Code § 3426.1(b) .............................................................................................. 14

Cal. Civ. Code § 3426.1(d) .............................................................................................. 13

Cal. Civ. Code § 3426.2 ................................................................................................... 13

Cal. Labor Code § 2860 ................................................................................................... 16

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

MPA ISO APPLICATION FOR TEMPORARY RESTRAINING ORDER/OSC RE PRELIMINARY INJUNCTION
EXPEDITED DISCOVERY

**Other Authorities**

Fed. R. Civ. P. 26(d) ...................................................................................................................17

MPA ISO APPLICATION FOR TEMPORARY RESTRAINING ORDER/OSC RE PRELIMINARY INJUNCTION
EXPEDITED DISCOVERY

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

# I.    INTRODUCTION

This is an action for, among other items, breach of confidentiality agreement and misappropriation of trade secrets by JLT Specialty Insurance Services Inc. ("JLT") against its former employees Defendants Gary Pestana, Sarah Sherman, Dustin Smith, and Ramy Morcos.  JLT was forced to file this lawsuit after it learned its former employees and the Defendants in this action, boldly misappropriated a substantial number of JLT's documents containing its highly confidential, proprietary, and trade secret information by, among other actions, connecting an external hard drive to their company issued computer and downloading JLT's documents from their computer to this external hard drive.   Significantly, this misappropriation occurred after they had accepted employment offers by JLT's direct competitor NFP Property & Casualty Services, Inc. ("NFP") and shortly before they left JLT and began working at NFP.  There is also very solid evidence that they are using this information in their new employment with NFP to unfairly compete with JLT.  As established within, Defendants' unlawful downloading and retention of JLT's confidential, proprietary, and trade secret information constitutes unlawful misappropriation of its protected material and a breach of Defendants' confidentiality agreements and agreements to return all of JLT's property on the termination of their employment.

Prior to JLT filing this lawsuit and bringing this application, JLT Defendants returned its stolen information.  While Defendants Pestana, Smith, and Morcos have begrudgingly returned certain selected documents they stole from JLT, they have not returned all of JLT's information/property.  Defendant Sherman has not returned anything.  JLT was therefore left with no choice but to file this lawsuit to protect its trade secrets.

By this *ex parte* application, JLT seeks nothing more than what it is lawfully entitled to receive under the federal Defend Trade Secrets Act and California law.  JLT seeks, among other items, to have Defendants enjoined from using JLT's trade secret information in any fashion and from destroying or modifying evidence of their misappropriation.   JLT also seeks to have Defendants return to JLT all of its property they unlawfully stole and retained on the termination of their employment.  Defendants will suffer no prejudice by this remedy because the requested relief

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

only prevents them from doing things they are legally prohibited from doing. JLT however, will suffer irreparable harm if the injunction is not issued as Defendants will be able to continue to use JLT's trade secret information to unlawfully and unfairly compete.

## II.     FACTUAL BACKGROUND

JLT is a leading provider of insurance, reinsurance, employee benefits advice and brokerage services. In order to provide the best service possible to its clients, JLT created practice groups that specialize in specific industries. (Nallen Decl., ¶3.) As pertinent to this action, JLT created a Real Estate Practice Group and a separate Property & Casualty Practice Group. (*Id.*) JLT's Real Estate Practice Group focuses on the insurance and risk management needs of commercial, habitational, residential and industrial property owners, operators, managers, investors and developers. (*Id.* at ¶4.) JLT's Property & Casualty Practice Group uses technical expertise, market-leading tools and resources, global platform, and carrier relationships to design custom solutions for its clients looking for property and casualty insurance solutions. (*Id.* at ¶5.)

As a result of its hard work and customer-focused approach, JLT has acquired and developed a vast store of invaluable confidential and proprietary information, including, *inter alia*, detailed customer and prospective customer lists, as well as information regarding its customers' particular current and potential future needs; JLT's unique marketing and servicing strategies, programs, procedures, and techniques; the abilities and compensation of its employees, agents and independent contractors; the criteria and formula used by JLT in pricing its insurance/reinsurance products and claims management, loss control and information management services; the structure and pricing of special insurance/reinsurance packages that the Company as negotiated with various underwriters; the identity, authority and responsibilities of key contacts at customers and potential customers; the composition and organization of client's businesses; the peculiar risks inherent in client's operations; information regarding client's existing insurance/reinsurance coverage policy expiration dates; premium amounts; commission rates; risk management service arraignments; loss histories; information regarding client's insurance/reinsurance preferences; and other such non-public information. (*Id.* at ¶6.)

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

JLT's confidential and proprietary customer information is not generally known or utilized in the industry and therefore has independent economic value. JLT gains a competitive advantage from this information and the fact that it is not generally known or utilized in the industry. (Nallen Decl., ¶7.)

JLT takes significant legal and technical measures to guard and protect its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses. (*Id.* at ¶8.) These measures include, but are not limited to, informing its employees that its confidential and proprietary information is confidential and is not to be disclosed outside of the Company or used for the benefit of any individual or entity other than JLT, password protection for access to its computers and computer networks, and limiting access to its confidential and proprietary information to those who have a legitimate need to know such information. (*Id.*)

JLT also protects its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses by requiring its employees, as a condition of their employment, to agree to and be bound by a written confidentiality agreement ("Confidentiality Agreement") and an agreement to return all of JLT's property on or before the termination of their employment ("Return Agreement"). (*Id.* at ¶9.) These agreements are contained in JLT's employee handbook that each JLT employee receives and/or is given access to on the inception of his/her employment. (*Id.*, Exh. A.)

JLT's Confidentiality Agreement states, in pertinent part:

> 42.1    It is important that all Sensitive Company Information (defined below) and client information be treated with discretion and confidentiality. As an employee of JLT, there should be no discussion, photocopying, duplication, or revealing of Sensitive Company Information or client information that is not generally known to the public in any form to anyone outside the Company. Sensitive Company Information and client information obtained as a result of employment with the Company and/or contact with clients is considered proprietary and can only be used in the course of employment with JLT. Any unauthorized use, collection, copying, removal, or transfer of this information in any manner that is not in the best interest of the Company will result in disciplinary action, up to and including unpaid suspension and termination from employment and/or other legal action. This policy applies to internal documents and records, as well as any information concerning clients, vendors, or suppliers.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

42.3 . . . Sensitive Company Information also includes, but is not limited to, trade secrets or confidential information relating to products, services, processes, know-how, marketing data, accounting records, pricing, business plans and strategies, and negotiations and contracts.

(*Id.* at ¶10.)

JLT also protects its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses by requiring its employees, as a condition of their employment, to return all Company property no later than the last day of employment ("Return Agreement"). (*Id.* at ¶11.)

### Defendant Gary Pestana

Defendant Gary Pestana is a former employee of JLT who worked for JLT as an Executive Vice President and Practice Leader of JLT's Real Estate Practice group from about August 2015 until he voluntarily resigned on about March 21, 2019. (Nallen Decl., ¶12.) Mr. Pestana left JLT to join NFP, one of JLT's direct competitors. (*Id.*)

JLT issued Mr. Pestana a laptop computer, a company email account, and an Apple iPhone during his employment to enable him to perform his job duties for JLT. (*Id.* at ¶13.) The last laptop computer JLT issued to Mr. Pestana was a Lenovo Thinkpad X250, PC-047CSX, C2028950-078-0003. (*Id.*) The last iPhone JLT issued to Mr. Pestana is an iPhone 6 model A1549,

As a condition of his employment, Defendant Pestana expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. (Nallen Decl., ¶15, Exh. B.) In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain. (*Id.*) He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended. (*Id.*)

As Executive Vice President and Practice Leader, Pestana was responsible for, among other tasks, generating new client business and maintaining and growing business with existing

clients. (*Id.* at ¶16.) Among the many clients Defendant Pestana serviced on behalf of JLT during his employment at JLT and with the assistance of JLT's staff, resources, and confidential, proprietary, and trade secret information, was a residential and commercial property developer engaged in a joint venture to redevelop twenty-two acres of prime real estate in downtown Brooklyn, NY, including 6 million square feet of residential space, 247,000 square feet of retail space, 336,000 square feet of office space and 8 acres of publicly accessible open space ("Client A"). (*Id.* at ¶18.) Defendant Pestana and his team also serviced on behalf of JLT, with the assistance of JLT's staff, resources, and confidential, proprietary, and trade secret information, a client relationship with a large, publicly traded real estate investment trust that owns more than 20 million square feet of shopping centers ("Client B"). (*Id.* at ¶19.)

### Defendant Sarah Sherman

Defendant Sarah Sherman is also a former employee of JLT. (Nallen Decl., ¶20.) JLT hired her in about October 2015 as a Senior Vice President in its Property & Casualty Practice group and later promoted her to Executive Vice President and Practice Leader of its Property & Casualty Practice group. (*Id.*) Ms. Sherman voluntarily resigned from JLT on about March 20, 2019, and joined NFP. (*Id.* at ¶21.)

JLT issued Ms. Sherman a laptop computer, a company email account, and an Apple iPhone during her employment to enable her to perform her job duties for JLT. (*Id.* at ¶22.). The last laptop computer JLT issued to Ms. Sherman was a Lenovo Thinkpad X250, PC-0A4368, C2028950-078-0002. (*Id.*) The last iPhone JLT issued to Ms. Sherman was an iPhone 6 model A1549. (*Id.*)

As a condition of her employment, Defendant Sherman expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. (Nallen Decl., ¶23, Exh. C.) In doing so, she agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for her own purposes or the purposes of another, for so long as such information has not fallen into the public domain. (*Id.*) She also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

her employment and to not retain any of JLT's information after her employment with JLT ended. (*Id.*)

As Executive Vice President and Practice Leader, Sherman was responsible for, among other tasks, producing new client business and maintaining and growing business with existing clients. (*Id.* at ¶24.) Ms. Sherman and her team worked with Mr. Pestana and his team to develop and service Client A and Client B on behalf of JLT. (*Id.* at ¶26.)

**Defendant Dustin Smith**

Defendant Dustin Smith worked for JLT as a Senior Vice President in its Real Estate Practice group from about January 2016 to about March 21, 2019. (*Id.* at ¶27.) He left JLT to join NFP. (Nallen Decl., ¶27.)

JLT issued Mr. Smith a laptop computer, a company email account, and an Apple iPhone during his employment to enable him to perform his job duties for JLT. (*Id.* at ¶28.). The last iPhone JLT issued to Mr. Smith was an iPhone 6 model A1549. (*Id.*)

As a condition of his employment, Mr. Smith expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. (*Id.* at ¶ 29, Exh. D.) In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain. (*Id.*) He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended. (*Id.*)

As Senior Vice President, Smith was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients. (*Id.* at ¶30.) Mr. Smith reported to Mr. Pestana during his employment with JLT. (*Id.* at ¶32.) Mr. Smith worked with Mr. Pestana to develop and service Client A and Client B on behalf of JLT. (*Id.* at ¶33.)

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

**Defendant Ramy Morcos**

Ramy Morcos worked for JLT a Vice President in its Real Estate Practice group from about November 2015 to about March 26, 2019. (*Id.* at ¶34.) He, like the other defendants, left JLT and joined NFP. (*Id.*)

JLT issued Mr. Morcos a laptop computer, a company email account, and an Apple iPhone to enable him to perform his job duties for JLT. (Nallen Decl., ¶37.). The last laptop computer JLT issued to Mr. Morcos was a Lenovo Thinkpad X250, PC-053PSR, C2028950-078-0001. (*Id.*) The last iPhone JLT issued to Mr. Morcos was an iPhone 7 model A1778. (*Id.*)

As a condition of his employment, Mr. Morcos also expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. (Nallen Decl., ¶36, Exh. E.) In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain. (*Id.*) He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended. (*Id.*)

As Vice President, Mr. Morcos was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients. (*Id.* at ¶37.) Mr. Morcos reported to Mr. Pestana during his employment with JLT. (*Id.* at ¶39.)

**Defendants' Unlawful Conduct**

Mr. Pestana had a lunch meeting with one or more representatives of NFP. (Nallen Decl., ¶37.) As stated above, Mr. Pestana resigned from JLT on about March 21, 2019 (Id. at ¶12); Ms. Sherman resigned from JLT on about March 20, 2019 (*Id.* at ¶21); Mr. Smith resigned from JLT on about March 21, 2019 (*Id.* at ¶27); and Mr. Morcos resigned from JLT on about March 26, 2019. (*Id.* at ¶34.) Each of these individuals, and others in their groups, all immediately started working for NFP.

Case No. 3:19-cv-02427

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

Because of the way Mr. Pestana, Ms. Sherman, Mr. Smith, Mr. Morcos and others resigned, JLT undertook an investigation to see if they improperly took and/or retained any of JLT's protected information on the termination of their employment. (*Id.* at ¶42.) Part of JLT's investigation included retaining a computer forensic company, Transperfect Legal Solutions, and requesting TransPerfect conduct a forensic review of their Company issued computers and iPhones. (Nallen Decl., ¶43.) JLT sent Defendants' Company issues laptop computers and iPhones to TransPerfect for analysis. (*Id.*)

TransPerfect's analysis of Mr. Pestana's laptop computer showed he had connected several unique external electronic storage devices to his laptop computer between March 11, 2019 and March 22, 2019. (Pochron Decl., ¶10.) Significantly, he last attached these devices to his computer on March 22, 2019, the day after he resigned from JLT. (*Id.*) TransPerfect also discovered evidence that Mr. Pestana had accessed JLT documents and information the day he resigned and the day after he left JLT and discovered evidence that certain of JLT's property was downloaded from JLT's computer system to his personal devices. (*Id.* at ¶¶7-14.) Transperfect also discovered Mr. Pestana had reset his JLT issued iPhone to factory settings thus wiping all potentially recoverable data from it. (*Id.* at ¶28.)

TransPerfect's analysis of Ms. Sherman's laptop computer showed she had connected several unique external electronic storage devices to her laptop computer and did so shortly before she resigned. (*Id.* at ¶17.) Transperfect also discovered Ms. Sherman had reset her JLT issued iPhone to factory settings thus wiping all potentially recoverable data from it. (*Id.* at ¶29.)

TransPerfect's analysis of Mr. Morcos' laptop computer showed he had connected several unique external electronic storage devices to his laptop computer and did so shortly before he resigned from JLT. (*Id.* at ¶20.) Transperfect also discovered Mr. Morcos had reset his JLT issued iPhone to factory settings thus wiping all potentially recoverable data from it. (*Id.* at ¶31.)

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. 3:19-cv-02427

MPA ISO APPLICATION FOR TEMPORARY RESTRAINING ORDER/OSC RE PRELIMINARY INJUNCTION
EXPEDITED DISCOVERY

1    Transperfect also discovered that Mr. Smith had reset his JLT issued iPhone to
2    factory settings thus wiping all potentially recoverable data from it. (*Id.* at ¶30.) Mr. Smith, and Mr.
3    Morcos, also failed to provide JLT with their passcodes for their JLT issued electronic devices when
4    they returned them.

5        Several of the files that Defendants accessed as shown in TransPerfect's report
6    contain JLT's confidential, proprietary, and/or trade secret information, including information
7    related to JLT's customers and potential customers. (Nallen Decl., ¶¶44-47.)   JLT did not and has
8    not authorized Mr. Pestana, Ms. Sherman, or Mr. Morcos to download these documents and
9    information and retain it after their resignation. (*Id.* at ¶47.)

10        JLT has also discovered evidence that Defendants have been using JLT's protected
11    information in their new employment with NFP to unlawfully compete with JLT. (Nallen Decl.,
12    ¶49.)  For example, on March 19, 2019, Vincent Zegers, a Senior Vice President in JLT's Real
13    Estate Practice who assisted Mr. Pestana and Mr. Smith with Client A, emailed Defendant Pestana
14    and Defendant Smith about Client A.  He wrote, in part, "Any update? It's pretty quiet which
15    worries me a bit . . ." (*Id.*)  That same day, just two days before Mr. Smith resigned and one day
16    before Mr. Pestana's resignation, Mr. Smith responded "[m]eeting with them tomorrow. W[ill] fill
17    you in after the meeting." Mr. Smith never filled Mr. Zegers in, as he promised in his email. (*Id.*)

18        The day after the meeting (March 21, 2019) Client A's Senior Vice President and
19    General Counsel emailed Mr. Pestana, Mr. Smith, Jessica Nelson and Jason McCarrick confirming
20    his knowledge that the employees were leaving JLT and transitioning to NFP. (*Id.* at ¶50.) He
21    wrote, in part: "Dear JLT Team: I have a hopefully quick request (and apologies knowing that you
22    are swamped with the transition)." (*Id.*)  That same day, after Mr. Nelson responded to Client A's
23    inquiry, Client A's Senior Vice President and General Counsel joked "Thank you for the Q[I]CK
24    turnaround . . . (They don't do that at Marsh!)," referring to JLT's parent company. (*Id.*)

25        On March 22, 2019, Client A's Senior Vice President and General Counsel sent a
26    letter "confirm[ing] the appointment, on an exclusive basis, [of] NFP Property & Casualty Services,
27    Inc. (NFP) as broker of record effective March 22, 2019." (*Id.* at ¶51.)  Client A carbon copied Mr.

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. 3:19-cv-02427

Pestana on its letter. (*Id.*)

In addition, on March 22, 2019, Mr. Pestana's first day of employment at NFP, and the same day Mr. Pestana last accessed JLT's protected information, at 9:07 a.m., Mr. Pestana emailed the Managing Director of Client C a template broker of record letter. (*Id.* at ¶52.) Mr. Pestana wrote to Client C's Managing Director, "Just need on your letterhead, signed and returned." (*Id.*) Mr. Pestana carbon copied his email to Stephanie Olloqui, another JLT employee who worked with Mr. Pestana and who resigned her employment with JLT the previous day, at her new NFP email address. (*Id.*) Mr. Pestana also carbon copied his email to Mr. Morcos at ramy.morcos@nfp.com, even though Mr. Morcos was employed by JLT until his resignation on March 26, 2019 (4 days later). (*Id.*) By letter dated March 22, 2019, JLT received notification that Client C submitted a broker of record letter to its insurance carrier appointing a new broker. JLT believes that Client C's new broker is NFP. (*Id.*)

Also, by letter dated March 22, 2019, Client B's Chief Executive Officer "confirm[ed] the appointment, on an exclusive basis, [of] NFP Property & Casualty Services, Inc. (NFP) as broker of record effective March 22, 2019." (Nallen Decl., ¶53.) Client B carbon copied Mr. Pestana on its letter. Other than the signature blocks and the letterhead, the letter from Client B was identical to the letter JLT received from Client A. (*Id.*)

Moreover, on or about March 22, 2019, JLT received notification that a hospitality client in Arizona, who previously was serviced by JLT through the Defendants, submitted a broker of record letter to its insurance carrier appointing a new broker ("Client D"). (*Id.* at ¶54.) JLT believes the Arizona-based hospitality client now works with NFP as its exclusive broker of record. (*Id.*)

Further, by letter dated March 27, 2019, JLT received notification confirming that a San Francisco based online direct home seller, who previously was serviced by Ms. Sherman, had appointed NFP, "on an exclusive basis . . . as broker of record effective March 27, 2019" ("Client E"). (*Id.* at ¶55.)

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

Case No. 3:19-cv-02427

**Certain Individual Defendants Return Certain JLT Property**

Prior to JLT brining this lawsuit, it notified Defendants of its claims and attempted to resolve this matter without litigation. (*See* Nallen Decl., ¶¶56-60; Weber Decl., ¶¶2-12 and Exhs. A-F.) While Defendants' counsel acknowledged that certain of JLT's former employees downloaded and/or retained JLT's property on the termination of their employment and returned certain individually selected documents that they unilaterally deemed appropriate to return (Defendants' counsel returned four documents on behalf of Defendant Pestana, seven documents on behalf of Defendant Morcos and certain documents on behalf of Mr. Smith), they have refused to return all of JLT's information that they unlawfully downloaded and retained. (*Id.*) They have also railed to cooperate with JLT to reach a reasonable resolution of this matter – *i.e.* one that would give JLT reasonable assurances that they do not have any of JLT's property in their possession, custody, or control and have not and will not use any such information in their new employment with NFP to unfairly compete with JLT. (*Id.*)

## III.   LEGAL ARGUMENT

### A.   JLT Has Met The Requirements For A Temporary Restraining Order.

Temporary restraining orders are a pre-trial remedy that is meant to preserve the status quo pending a hearing on the moving party's application for a preliminary injunction. *Granny Goose Foods, Inc. v. Brotherhood of Teamsters & Auto Truck Drivers*, 415 U.S. 42, 49 (1974). Similarly, a preliminary injunction is a provisional remedy meant to prevent irreparable loss prior to judgment. *Sierra On-Line, Inc. v. Phoenix Software, Inc.*, 739 F.2d 1415, 1422 (9th Cir. 1984).

For a temporary restraining order to issue, JLT must, and as established below, ca, establishing: (1) a likelihood of success on the merits of its underlying claims for relief; (2) a likelihood of irreparable harm in the absence of preliminary relief; (3) that the balance of equities favors JLT; and (4) that an injunction is in the public interest. *Winter v. National Resources Defense Council., Inc.*, 555 U.S. 7, 20 (2008). Regardless of whether Defendants' misconduct is evaluated under contract law or the DTSA/CUTSA, JLT has established it is entitled to his provisional relief.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

1.     **JLT is Likely To Prevail On The Merits Of Its Trade Secret Misappropriation And Breach Of Contract Claims Against Defendants.**

JLT has alleged two claims for relief: (1) breach of contract based on breach of the Confidentiality Agreement and breach of the Return Agreement; and (2) misappropriation of trade secret information under the DTSA and the CUTSA. As established below, JLT has provided substantial evidence it is likely to prevail on both.

a.     **JLT Has Established It Is Likely To Prevail On Its Breach Of Contract Claim.**

JLT established each Defendant entered into agreements with JLT in which they agreed to hold in confidence JLT's proprietary and confidential information and return all such information on or before the termination or resignation of their employment with JLT. (Nallen Decl., ¶¶10, 15, 23, 29, 36.) Violations of confidentiality agreements such as these are sufficient to state a cause of action for breach of contract and can be enjoined. *See generally Hollingsworth Solderless Terminal Co. v. Turley*, 622 F.2d 1324, 1338 (9th Cir. 1980) ("[I]f the information used by the former employee is confidential or his solicitation activity constitutes unfair competition, then contracts with language similar to that agreed to by [defendants] have been enforced by California courts."); *By-Buk Co. v. Printed Cellophane Tape Co.*, 163 Cal. App. 2d 157, 164 (1958) (confidentiality agreements signed by employees are enforceable by injunctive relief).

Nor is there any question that the Defendants breached their agreements with JLT. At minimum, JLT has provided substantial evidence that, despite their promises to return all of JLT's property on or before the termination or resignation of their employment, Defendants have not done so. (Nallen Decl., ¶¶56-57; Weber Decl., Exh. A-F.) In fact, they appear to be using JLT's information in their new employment with NFP to unfairly compete with JLT. (Nallen Decl., ¶¶40-55.) Based on this evidence, JLT has clearly established it will likely prevail on its breach of contract theory and the temporary restraining order should issue.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

### b.   JLT Has Established It Is Likely To Prevail On Its Trade Secret Misappropriation Theory.

Both the DTSA and the CUTSA specifically authorize Courts to enjoin "actual or threatened" misappropriation of trade secrets. 18 U.S.C. § (b)(3); Cal. Civ. Code § 3425.2(a). Where a former employee takes documents containing trade secret information, the misappropriation is "actual" within the meaning of California Civil Code section 3426.2, and the potential defense of the "inevitable disclosure" doctrine is not implicated. *Central Valley Hospital v. Smith*, 162 Cal.App.4th 501, 524-525; *see also* 18 U.S.C. §1839(5).

To establish a likelihood of success on it misappropriation claim, JLT must show: (a) a legally protectable trade secret; and (b) a legal basis, either a covenant or a confidential relationship, upon which to predicate relief. *Imi-Tech Corp. v. Gagliani*, 691 F. Supp. 214, 230 (S.D.Cal. 1986) (citing *Futurecraft Corp. v. Clary Corp.*, 205 Cal. App. 2d 279, 283, 23 Cal.Rptr. 198 (1962)) ("[Plaintiff] has met its burden by showing the probable existence of trade secrets, the access to or acquisition of the secrets by former employee/defendants under an obligation of confidentiality, and the use or disclosure by these employees and their present employer of the secrets, and serious and irreparable harm.") JLT can clearly establish both elements in this action.

### (1)   JLT Has Established It's Information Constitutes A Protectable Trade Secret.

A "trade secret" is defined as "information, including a formula, pattern, compilation, program, device, method, technique or process" that:

    (1)    derives independent economic value, actual or potential, from not being generally known to the public or to other persons who can obtain economic value from its disclosure or use; and;

    (2)    is the subject of efforts that are reasonable under the circumstances to maintain its secrecy.

(Civ. Code § 3426.1(d)); 18 U.S.C. §1839(3). JLT has established both of these elements.

### (a)   JLT Information Has Independent Economic Value.

JLT's confidential and proprietary information identified in this application is certainly worthy of protection under the UTSA. Defendants misappropriated, among other items,

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

JLT's confidential information regarding its customers and potential customers, it is well established that this type of customer information, compilation, or list qualifies as a trade secret. *Morlife, Inc. v. Perry* (1997) 56 Cal.App.4th, 1514, 1522; *Abba Rubber Co. v. Seaquist* (1991) 235 Cal.App.3d 1, 18; *MAI Systems Corp. v. Peak Computer, Inc.* (9th Cir. 1993) 991 F.2d 511. Indeed, the more difficult the information is to obtain, and the more resources expended by an employer in gathering it, the more likely a court will find such information constitutes a trade secret. *Courtesy Temporary Serv., Inc. v. Camacho* (1990) 222 Cal.App.3d 1278, 1287. Moreover, JLT established this information has independent economic value. (Nallen Decl., ¶7.) Finally, any potential dispute on this element is a question of fact that is insufficient to justify denial of a temporary restraining order/preliminary injunction. *San Jose Constr., Inc. v. SBCC, Inc.*, 155 Cal.App.4th 1528, 1537 (2007)

     (b)  **JLT Took Reasonable Means To Protect It's Trade Secret Information.**

   As described above, JLT took reasonable means under the circumstances to maintain the secrecy of its trade secret information. (Nallen Decl., ¶¶8-11.) Reasonable efforts to maintain the secrecy of information can include measures limiting access to the information, advising employees of its proprietary nature, and keeping proprietary information locked or otherwise secured. *See*, e.g., *DVD Copy Control Ass'n., Inc. v. Bunner* (2004) 116 Cal.App.4th 241, 251. Under the circumstances, JLT's efforts to maintain the secrecy of its trade secrets were reasonable.

     (2)  **JLT Presented Substantial Evidence Defendants Had Misappropriated Its Trade Secret Information.**

   To prove a claim for misappropriation, JLT must demonstrate that Defendants misappropriated its trade secret through acquisition, use, or disclosure. Cal. Civ. Code § 3426.1(b); 18 U.S.C. § 1839(5), (6). Defendants' actions amounted to a misappropriation by acquisition, which is defined in the DTSA and the CUTSA as acquisition of a trade secret of another by a person who knows or has reason to know that the trade secret was acquired by improper means. (*Id.*) "Improper means" includes theft, bribery, misrepresentation, breach or inducement of a breach of a duty to maintain secrecy, or espionage through electronic or other means. (*Id.*)

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

JLT has submitted substantial evidence Defendants misappropriated its trade secret information by acquisition when they took and/or retained JLT's documents containing JLT's trade secret information in violation of their Confidentiality Agreements and/or Return Agreements. (Nallen Decl., ¶¶40-60.) There can be no question that Defendants' actions were not consented to or authorized by JLT. (*Id.*) Moreover, Defendants clearly knew their actions were wrongful because they took steps to hide their conduct and have refused to return JLT's property. (Nallen Decl., ¶40-60; Weber Decl., ¶¶2-12, Exh. A-F.)

## 2. JLT Will Suffer Irreparable Injury Unless Defendants Unlawful Acts Are Enjoined.

Once a party has established a high likelihood of success on the merits, the issuance of a preliminary injunction is required if there is any significant possibility of irreparable harm. *Cabo Distributing Cor., Inc. v. Brady*, 821 F.Supp. 582, 599 (N.D. Cal. 1992). Moreover, irreparable injury justifying injunctive relief has been presumed in similar situations where a defendant's conduct is misappropriation of confidential information. *Ernest & Ernest v. Carlson*, 247 Cal.App.2d 125, 128-129 (1966). Irreparable injury is also presumed when a plaintiff has met the "probability of success" prong in a claim for relief based on a statutory violation. *U.S. v. Nutricology*, Inc. 982 F.2d 394, 398 (9th Cir. 1992) (passage of a statute shows Congress believes violations will harm the public.) Moreover, once a trade secret is lost, it is lost forever. *North Atlantic Intruments, Inc. v. Haber*, 188 F.3d 38, 49 (2d Cir. 1999); *see also Campbell Soup Co., v. ConAgra, Inc.*, 977 F.2d 86 (3rd Cir. 1992) (recognizing that "an intention to make imminent or continued use of a trade secret or to disclose it to a competitor will also certainly show immediate irreparable harm"); *Compass Bank v. Hartley*, 40 F.Supp.2d 973, 983 (D. Ariz. 2006) (former employer established threat of irreparable harm, given that injunctive relief was only effective means of enforcing restrictive covenants, in light of their limited duration, and that former employee and his new company had accepted eleven of former employer's customers and would continue to accept such business unless enjoined from doing so.)

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

Here JLT has met the "probability of success" prong in showing that Defendants have violated the DTSA and the CUTSA. The documents/information that Defendants misappropriated contain some of JLT's most valuable trade secret information. (Nallen Decl., ¶56-57.) These documents contain information identifying JLT's customers and its customer's specific information that would and appears to have allowed Defendants to unfairly compete with JLT. Thus, it has also established it has and will continue to suffer irreparable injury in this action.

### 3. JLT Has Established The Balance Of Equities Weighs In Favor Of Granting Injunctive Relief.

Again, the documents/information that Defendants misappropriated contain some of JLT's most valuable trade secret information. (Nallen Decl., ¶56-57.) Defendants' have no ownership interest in these documents. *See* Cal. Labor Code § 2860 ("[e]verything which an employee acquires by virtue of his employment, except the compensation which is due to him from his employer, belongs to the employer, whether acquired lawfully or unlawfully, or during or after the expiration of the term of his employment.") Moreover, as a condition of their employment at JLT, Defendants agreed to return to JLT all of JLT's property on or before the termination of their employment. (Nallen Decl., ¶¶10, 15, 23, 29, 36.) Accordingly, the balance of equities between JLT and Defendants favors JLT because Defendants have no right to possess JLT's property while JLT has an immediate right to have it returned.

### 4. Granting The Requested Relief Is In The Public Interest.

In this matter, the public interest is served by granting a temporary restraining order. Defendants are only being asked to comply with trade laws and their agreements they entered into with JLT. The public interest is best served when a defendant is asked to do no more than comply with the law and honor their agreements. *Henry Schein, Inc. v. Cook*, 191 F.Supp.3d 1072 (N.D. Cal. 2016). The public interest is also served by enabling the protection of trade secrets. (*Id.*) If former employees were allowed to steal their former employer's information and use it to unfairly compete, companies would be disinclined to invest the time and resources necessary to innovate and provide products and services to the public.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

Case No. 3:19-cv-02427

**B.** **An Evidence Preservation Order Should be Issued and Limited Expedited Discovery Should be Allowed.**

In a case of this nature, where information resides on computers and in e-mail messages, guilty defendants are prone to try to delete such information to avoid getting caught. In this regard, courts have recognized a special duty to preserve electronic evidence. *See, e.g., Thomson v. United States Dep't of Housing and Urban Dev.*, 219 F.R.D. 93, 96 (D.Md. 2003); *Silvestri v. General Motors Corp.*, 271 F.3d 583, 591 (4th Cir. 2001).

**1.** **An Evidence Preservation Order Is Warranted.**

The duty to preserve electronic evidence is triggered when the party knows or should have known that the evidence is relevant to litigation. See *Winters v. Textron, Inc.*, 187 F.R.D. 518, 520 (M.D.Pa. 1999) ("A duty to preserve evidence, independent from a court order to preserve evidence, arises when there is (1) pending or probable litigation involving the defendant; (2) knowledge of the existence or likelihood of litigation, (3) foreseeable prejudice to the other party if the evidence were to be discarded and (4) evidence relevant to the litigation"). JLT has conclusively demonstrated that Defendants have misappropriated JLT's protected information and taken steps to delete information from certain devices in an apparent attempt to hide their activities. A judicial preservation order is therefore appropriate.

**2.** **Limited Expedited Discovery Should Be Allowed.**

Consistent with its request for a hold order, JLT also seeks a court order allowing it to conduct certain limited discovery. (*See* Declaration of Benjamin A. Emmert, ¶¶7-16 Exhs. A-L.) Courts in the Ninth Circuit have allowed parties to pending litigation to commence discovery in advance of the Rule 26(d) start date upon a showing of good cause. *See, e.g., Semitool, Inc., v. Tokyo Electron America, Inc.*, 208 F.R.D. 273, 276-277 (N.D.Cal. 2002) (Plaintiff in patent infringement and unfair competition case made "a clear showing that the narrow categories of documents and physical inspection . . .not otherwise accessible will substantially contribute to moving this case forward . . .") Good cause in this context has been found where the need for expedited discovery, in consideration of the administration of justice, outweighs the prejudice to the

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

responding party. See *Semitool*, 208 F.R.D. at 276-277; *Pod-Ners, LLC, v. Northern Feed & Bean Of Lucerne Ltd. Liability Co.*, 204 F.R.D. 675 (D.Colorado 2002) ("Good cause frequently exists in cases involving claims of infringement and unfair competition.")

Such good cause exists here. The requested expedited discovery will enable JLT to determine the scope and extent of Defendants' wrongdoing and otherwise. Moreover, the requests are narrowly tailored so as to place the least amount of inconvenience on Defendants and keep the playing field level.

## IV. CONCLUSION

Based on the foregoing, JLT respectfully submits that its Application should be granted and that a temporary restraining order and order to show cause regarding preliminary injunction should be issued promptly. In addition, JLT further submits that good cause exists for entry of an evidence preservation order as well as for expedited discovery so as to enable JLT to determine the full scope and extent of Defendants' improper conduct.

Dated: May 12, 2019

BENJAMIN A. EMMERT
LITTLER MENDELSON, P.C.
Attorneys for Plaintiff
JLT SPECIALTY INSURANCE SERVICES INC.

FIRMWIDE:164306469.1 059121.1000

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

MPA ISO APPLICATION FOR TEMPORARY RESTRAINING ORDER/OSC RE PRELIMINARY INJUNCTION
EXPEDITED DISCOVERY