BENJAMIN A. EMMERT, Bar No. 212157
LITTLER MENDELSON, P.C.
50 West San Fernando Street, 7th Floor
San Jose, CA 95113.2303
Telephone: 408.998.4150
Fax No.: 408.288.5686
E-mail: bemmert@littler.com

DOUGLAS A. WICKHAM, Bar No. 127268
HELEN BRAGINSKY, Bar No. 282359
LITTLER MENDELSON, P.C.
633 West Fifth Street, 63rd Fl.
Los Angeles, California 90071.3541
Telephone: 213.443.4300
Fax No.: 213.443.4299
E-mail:dwickham@littler.com
E-mail:hbraginsky@littler.com

Attorneys for Plaintiff
JLT SPECIALTY INSURANCE SERVICES INC.

UNITED STATES DISTRICT COURT

NORTHERN DISTRICT OF CALIFORNIA

SAN FRANCISCO DIVISION

| | |
|---|---|
| JLT SPECIALTY INSURANCE SERVICES INC., a Delaware corporation,<br><br>Plaintiff,<br><br>v.<br><br>GARY PESTANA, an individual; SARAH SHERMAN, an individual; DUSTIN SMITH, an individual; and RAMY MORCOS, an individual,<br><br>Defendants. | Case No. 3:19-cv-02427<br><br>**DECLARATION OF STEPHANIE NALLEN IN SUPPORT OF JLT SPECIALTY INSURANCE SERVICES INC. EX PARTE APPLICATION FOR (1) TEMPORARY RESTRAINING ORDER; (2) EXPEDITED DISCOVERY; AND (3) ORDER TO SHOW CAUSE RE PRELIMINARY INJUNCTION**<br><br>Date: May 13, 2019<br>Time: TBD<br>Dept.: TBD<br><br>Complaint Filed: May 3, 2019<br>Trial Date: Not Set |

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

1.                                                                                          Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

I, Stephanie Nallen, declare as follows:

1. I am the Sr. Human Resources Business Partner of Plaintiff JLT Specialty Insurance Services Inc. ("JLT" or "Plaintiff").[1] I am an adult over the age of 18 and have personal knowledge of the facts set forth herein, or, where indicated below, I believe those facts to be true based on information JLT's files and records and/or provided to me by others.

2. In my capacity as Sr. Human Resources Business Partner, I am one of the people responsible for human resources issues at the company.

3. JLT is a leading provider of insurance, reinsurance, employee benefits advice and brokerage services. In order to provide the best service possible to its clients, JLT created practice groups that specialize in specific industries. As pertinent to this action, JLT created a Real Estate Practice Group and a separate Property & Casualty Practice Group.

4. JLT's Real Estate Practice Group focuses on the insurance and risk management needs of commercial, habitational, residential and industrial property owners, operators, managers, investors and developers.

5. JLT's Property & Casualty Practice Group uses technical expertise, market-leading tools and resources, global platform, and carrier relationships to design custom solutions for its clients looking for property and casualty insurance solutions.

6. As a result of its hard work and customer-focused approach, JLT has acquired and developed a vast store of invaluable confidential and proprietary information, including, *inter alia*, detailed customer and prospective customer lists, as well as information regarding its customers' particular current and potential future needs; JLT's unique marketing and servicing strategies, programs, procedures, and techniques; the abilities and compensation of its employees, agents and independent contractors; the criteria and formula used by JLT in pricing its insurance/reinsurance products and claims management, loss control and information management services; the structure and pricing of special insurance/reinsurance packages that the Company as negotiated with various underwriters; the identity, authority and responsibilities of key contacts at customers and potential customers; the composition and organization of client's businesses; the peculiar risks inherent in

---

[1] JLT was purchased by Marsh & McLennan in a transaction that closed April 1, 2019.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

2.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

client's operations; information regarding client's existing insurance/reinsurance coverage policy expiration dates; premium amounts; commission rates; risk management service arraignments; loss histories; information regarding client's insurance/reinsurance preferences; and other such non-public information.

7. JLT's confidential and proprietary customer information is not generally known or utilized in the industry and therefore has independent economic value. JLT gains a competitive advantage from this information and the fact that it is not generally known or utilized in the industry.

8. JLT takes significant legal and technical measures to guard and protect its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses. These measures include, but are not limited to, informing its employees that its confidential and proprietary information is confidential and is not to be disclosed outside of the Company or used for the benefit of any individual or entity other than JLT, password protection for access to its computers and computer networks, and limiting access to its confidential and proprietary information to those who have a legitimate need to know such information.

9. JLT also protects its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses by requiring its employees, as a condition of their employment, to agree to and be bound by a written confidentiality agreement ("Confidentiality Agreement") and an agreement to return all of JLT's property on or before the termination of their employment ("Return Agreement"). These agreements are contained in JLT's employee handbook that each JLT employee receives and/or is given access to on the inception of his/her employment. A true and correct copy of the pertinent portions of JLT's employee handbook in effect during the time period pertinent to this action is attached hereto as Exhibit A.

10. JLT's Confidentiality Agreement states, in pertinent part:

> 42.1 It is important that all Sensitive Company Information (defined below) and client information be treated with discretion and confidentiality. As an employee of JLT, there should be no discussion, photocopying, duplication, or revealing of Sensitive Company Information or client information that is not generally known to the public in any form to anyone outside the Company. Sensitive Company Information and client information obtained as a result of employment with the Company and/or contact with clients is considered proprietary and can only be used in the course

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

3.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

of employment with JLT. Any unauthorized use, collection, copying, removal, or transfer of this information in any manner that is not in the best interest of the Company will result in disciplinary action, up to and including unpaid suspension and termination from employment and/or other legal action. This policy applies to internal documents and records, as well as any information concerning clients, vendors, or suppliers.

42.3    . . . Sensitive Company Information also includes, but is not limited to, trade secrets or confidential information relating to products, services, processes, know-how, marketing data, accounting records, pricing, business plans and strategies, and negotiations and contracts.

11. JLT also protects its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses by requiring its employees, as a condition of their employment, to return all Company property no later than the last day of employment ("Return Agreement").

### Gary Pestana

12. Defendant Gary Pestana is a former employee of JLT. JLT hired Mr. Pestana in about August 2015 as an Executive Vice President and Practice Leader of JLT's Real Estate Practice group. Mr. Pestana worked in JLT offices in Los Angeles, CA. Mr. Pestana voluntarily resigned from JLT on about March 21, 2019. I understand that he started working for NFP following his separation from JLT. I understand that Mr. Pestana is assisting NFP to directly compete with JLT in his position with NFP.

13. During his employment, JLT issued Mr. Pestana a laptop computer, a company email account, and an Apple iPhone. The last laptop computer JLT issued to Mr. Pestana was a Lenovo Thinkpad X250, PC-047CSX, C2028950-078-0003. The last iPhone JLT issued to Mr. Pestana is an iPhone 6 model A1549. JLT issued Mr. Pestana these electronic accounts and electronic devices to enable him to perform his job duties for JLT and for no other purpose. These electronic accounts and devices remained and remain JLT's property at all times.

14. Mr. Pestana returned his laptop computer to JLT on March 22, 2019.

15. As a condition of his employment, Defendant Pestana expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. Attached hereto as Exhibit B is a true and correct copy of Mr. Pestana's offer letter in which he is provided a

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

4.    Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

copy of JLT's employee handbook. In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain. He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended.

16. As Executive Vice President and Practice Leader, Pestana was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients.

17. Defendant Pestana relied on JLT's financial and internal resources, as well as JLT's confidential, proprietary, and trade secret information, to generate business, service clients and manage client relationships. He developed client relationships by virtue of his employment and his use of JLT's protected information, and with the support of an experienced team of JLT employees, on whom he relied to carry out his job duties.

18. Among the many clients Defendant Pestana serviced on behalf of JLT during his employment at JLT and with the assistance of JLT's staff, resources, and confidential, proprietary, and trade secret information, was a residential and commercial property developer engaged in a joint venture to redevelop twenty-two acres of prime real estate in downtown Brooklyn, NY, including 6 million square feet of residential space, 247,000 square feet of retail space, 336,000 square feet of office space and 8 acres of publicly accessible open space ("Client A").

19. Defendant Pestana and his team also serviced on behalf of JLT, with the assistance of JLT's staff, resources, and confidential, proprietary, and trade secret information, a client relationship with a large, publicly traded real estate investment trust that owns more than 20 million square feet of shopping centers ("Client B").

**Defendant Sarah Sherman**

20. Defendant Sarah Sherman is a former employee of JLT. JLT hired Ms. Sherman in about November 2015 as a Senior Vice President in its Property & Casualty Practice group. Ms. Sherman worked in JLT offices in San Francisco, CA. JLT later promoted Sherman to

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

5.   Case No. 3:19-cv-02427
Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

Executive Vice President and Practice Leader of its Property & Casualty Practice group. She held this position until she voluntarily resigned on March 20, 2019.

21. Ms. Sherman voluntarily resigned from JLT on about March 20, 2019. I understand that she started working for NFP following her separation from JLT. I understand that Ms. Sherman is assisting NFP to directly compete with JLT in her position with NFP.

22. During her employment, JLT issued Ms. Sherman a laptop computer, a company email account, and an Apple iPhone. The last laptop computer JLT issued to Ms. Sherman was a Lenovo Thinkpad X250, PC-0A4368, C2028950-078-0002. The last iPhone JLT issued to Ms. Sherman was an iPhone 6 model A1549. JLT issued Ms. Sherman these electronic accounts and electronic devices to enable her to perform her job duties for JLT and for no other purpose. These electronic accounts and devices remained and remain JLT's property at all times.

23. As a condition of her employment, Defendant Sherman expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. Attached hereto as Exhibit C is a true and correct copy of Ms. Sherman's acknowledgment and agreement to be bound by the policies contained in JLT's employee handbook. In doing so, she agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for her own purposes or the purposes of another, for so long as such information has not fallen into the public domain. She also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of her employment and to not retain any of JLT's information after her employment with JLT ended.

24. As Executive Vice President and Practice Leader, Sherman was responsible for, among other tasks, producing new client business and maintaining and growing business with existing clients.

25. Defendant Sherman relied on JLT's financial and internal resources, as well as JLT confidential, proprietary, and trade secret information, to generate business, service clients and manage client relationships. She developed client relationships by virtue of her employment and her use of JLT's protected information and with the support of an experienced team of JLT employees, on whom she relied to carry out her job duties.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

6.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

26. Ms. Sherman and her team worked with Mr. Pestana and his team to develop and service Client A and Client B on behalf of JLT.

### Defendant Dustin Smith

27. Defendant Dustin Smith is a former employee of JLT. JLT hired Mr. Smith in about January 2016 as a Senior Vice President in its Real Estate Practice group. Mr. Smith worked in JLT's Los Angeles, CA office. Mr. Smith voluntarily resigned from JLT on about March 21, 2019. I understand that he started working for NFP following his separation from JLT. I understand that Mr. Smith is assisting NFP to directly compete with JLT in his position with NFP.

28. During his employment, JLT issued Mr. Smith a laptop computer, a company email account, and an Apple iPhone. The last iPhone JLT issued to Mr. Smith was an iPhone 6 model A1549. JLT issued Mr. Smith these electronic accounts and electronic devices to enable him to perform his job duties for JLT and for no other purpose. These electronic accounts and devices remained and remain JLT's property at all times.

29. As a condition of his employment, Mr. Smith expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. Attached hereto as Exhibit D is a true and correct copy of Mr. Smith's acknowledgment and agreement to be bound by the policies contained in JLT's employee handbook. In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain. He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended.

30. As Senior Vice President, Smith was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients.

31. Mr. Smith relied on JLT's financial and internal resources, as well as JLT confidential, proprietary, and trade secret information, to generate business, service clients and manage client relationships. He developed client relationships by virtue of his employment, and with the use of JLT's protected information and the support of an experienced team of JLT employees, on

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

7.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

whom he relied to carry out his job duties.

32. Mr. Smith reported to Mr. Pestana during his employment with JLT.

33. Mr. Smith worked with Mr. Pestana to develop and service Client A and Client B on behalf of JLT.

### Defendant Ramy Morcos

34. Ramy Morcos is a former employee of JLT, JLT hired Mr. Morcos in about November 2015 as a Vice President in its Real Estate Practice group. Mr. Morcos worked in JLT's Los Angeles, CA office. Mr. Morcos voluntarily resigned from JLT on about March 26, 2019. I understand he started working for NFP following his separation from JLT. I understand that Mr. Morcos is assisting NFP to directly compete with JLT in his position with NFP.

35. During his employment, JLT issued Mr. Morcos a laptop computer, a company email account, and an Apple iPhone. The last laptop computer JLT issued to Mr. Morcos was a Lenovo Thinkpad X250, PC-053PSR, C2028950-078-0001. The last iPhone JLT issued to Mr. Morcos was an iPhone 7 model A1778. JLT issued Mr. Morcos these electronic accounts and electronic devices to enable him to perform his job duties for JLT and for no other purpose. These electronic accounts and devices remained and remain JLT's property at all times.

36. As a condition of his employment, Mr. Morcos expressly agreed to be bound by and comply with JLT's Confidentiality Agreement and its Return Agreement. Attached hereto as Exhibit E is a true and correct copy of Mr. Morcos' acknowledgment and agreement to be bound by the policies contained in JLT's employee handbook. In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain. He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended.

37. As Vice President, Mr. Morcos was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients.

38. Mr. Morcos relied on JLT's financial and internal resources, as well as JLT

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

8.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

confidential, proprietary, and trade secret information, to generate business, service clients and manage client relationships. He developed client relationships by virtue of his employment, and with the support of an experienced team of JLT employees, on whom he relied to carry out his job duties.

39. Mr. Morcos reported to Mr. Pestana during his employment with JLT.

## Defendants' Unlawful Conduct

40. I have been informed that JLT learned that, on or about March 1, 2019, Mr. Pestana had a lunch meeting with one or more representatives of NFP. NFP is a direct competitor of JLT.

41. As described below, following this meeting, JLT learned Mr. Pestana, Ms. Sherman, Mr. Smith, and Mr. Morcos accessed JLT's computer systems and downloaded numerous documents containing JLT's confidential, proprietary, and/or trade secret information.

42. JLT learned this information as follows: Because of the way Mr. Pestana, Ms. Shreman, Mr. Smith, Mr. Morcos and others resigned, JLT undertook an investigation to see if they improperly took and/or retained any of JLT's protected information on the termination of their employment.

43. Part of JLT's investigation included a forensic review of their company issued computers. On the termination of their employment, Mr. Pestana, Ms. Sherman, Mr. Smith, and Mr. Morcos returned their computers that JLT issued to them. JLT then sent these computers to Transperfect Legal Solutions and requested it conduct a forensic review of the computers to see if there was any evidence that these individuals downloaded JLT's documents and information within the weeks prior to their voluntary resignations.

44. I have reviewed the file list of the files and folders Mr. Pestana accessed prior to his resignation. Several of these files and folders contain JLT's confidential, proprietary, and/or trade secret information, including JLT's customer and potential customer information, trade secret files related to Client B, numerous broker of records letters, and other protected information.

45. I have reviewed the file list of the files and folders Ms. Sherman accessed prior to her resignation. Several of these files and folders contain JLT's confidential, proprietary, and/or trade secret information, including trade secret information related to the coverage, losses, renewal

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

9.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

presentations and policies of a large hospitality client.

46.   I have reviewed the file list of the files and folders Mr. Morcos accessed prior to his resignation. Several of these files and folders contain JLT's confidential, proprietary, and/or trade secret information regarding client pricing, audit, loss, risk and coverage information related to numerous JLT clients, including (i) a real estate investment, company based in Los Angeles, California ("Client C"); (ii) a general contracting and construction company in Chino, CA; (iii) a real estate investment and construction company based in Indianapolis, IN; and (iv) a second a real estate investment, management company based in Los Angeles, California.

47.   JLT did not and has not authorized Mr. Pestana, Ms. Sherman, or Mr. Morcos to download these documents and information.

48.   JLT also learned that Mr. Pestana and Ms. Sherman, and four other former JLT employees who left JLT as part of the mass resignation and went to work for NFP (Jessica Nelson, Stephani Ollogui, Maggie Martinez and Jason McCarrick), wiped, or attempted to wipe, their JLT-issued iPhones and iPads prior to returning them to JLT.

49.   In addition to unauthorized downloading of JLT's protected information, JLT believes Defendants been using JLT's protected information in their new employment with NFP to unlawfully compete with JLT. For example, on March 19, 2019, Vincent Zegers, a Senior Vice President in JLT's Real Estate Practice who assisted Mr. Pestana and Mr. Smith with Client A, emailed Defendant Pestana and Defendant Smith about Client A. He wrote, in part, "Any update? It's pretty quiet which worries me a bit......." That same day, just two days before Mr. Smith resigned and one day before Mr. Pestana's resignation, Mr. Smith responded "[m]eeting with them tomorrow. W[ill] fill you in after the meeting." Mr. Smith never filled Mr. Zegers in, as he promised in his email.

50.   The day after the meeting (March 21, 2019) Client A's Senior Vice President and General Counsel emailed Mr. Pestana, Mr. Smith, Jessica Nelson and Jason McCarrick confirming his knowledge that the employees were leaving JLT and transitioning to NFP. He wrote, in part: "Dear JLT Team: I have a hopefully quick request (and apologies knowing that you are swamped with the transition)." That same day, after Mr. Nelson responded to Client A's inquiry, Client A's Senior Vice President and General Counsel joked "Thank you for the Q[I]CK turnaround . . . (They don't do that

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

10.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

at Marsh!),"  referring to JLT's parent company.

51. On March 22, 2019, Client A's Senior Vice President and General Counsel sent a letter "confirm[ing] the appointment, on an exclusive basis, [of] NFP Property & Casualty Services, Inc. (NFP) as broker of record effective March 22, 2019." Client A carbon copied Mr. Pestana on its letter.

52. In addition, on March 22, 2019, Mr. Pestana's first day of employment at NFP, at 9:07 a.m., Mr. Pestana emailed the Managing Director of Client C a template broker of record letter. Mr. Pestana wrote to Client C's Managing Director, "Just need on your letterhead, signed and returned." Mr. Pestana carbon copied his email to Stephanie Olloqui, who resigned her employment with JLT the previous day, at her new NFP email address. Mr. Pestana also carbon copied his email to Mr. Morcos at ramy.morcos@nfp.com, even though Mr. Morcos was employed by JLT until his resignation on March 26, 2019 (4 days later). By letter dated March 22, 2019, JLT received notification that Client C submitted a broker of record letter to its insurance carrier appointing a new broker. JLT believes that Client C's new broker is NFP.

53. Also, by letter dated March 22, 2019, Client B's Chief Executive Officer "confirm[ed] the appointment, on an exclusive basis, [of] NFP Property & Casualty Services, Inc. (NFP) as broker of record effective March 22, 2019." Client B carbon copied Mr. Pestana on its letter. Other than the signature blocks and the letterhead, the letter from Client B was identical to the letter JLT received from Client A.

54. Moreover, on or about March 22, 2019, JLT received notification that a hospitality client in Arizona, who previously was serviced by JLT through the Defendants, submitted a broker of record letter to its insurance carrier appointing a new broker ("Client D"). JLT believes the Arizona-based hospitality client now works with NFP as its exclusive broker of record.

55. Further, by letter dated March 27, 2019, JLT received notification confirming that a San Francisco based online direct home seller, who previously was serviced by Ms. Sherman, had appointed NFP, "on an exclusive basis . . . as broker of record effective March 27, 2019" ("Client E").

56. Between March 25, 2019 and March 27, 2019, Aubrie Ekman, Associate

11.   Case No. 3:19-cv-02427

General Counsel for JLT, sent letters to Mr. Pestana, Ms. Sherman, Mr. Smith, and Mr. Morcos reminding them of their continuing confidentiality obligations to JLT. On April 26, 2019, attorneys for NFP acknowledged that Mr. Pestana and Mr. Morcos downloaded files from their JLT computers and/or JLT systems onto USB drives and ostensibly returned eleven files. These files that were returned on behalf of Mr. Pestana were: (i) a MS PowerPoint presentation prepared for a prospective client in October 2015, outlining capabilities and expertise in construction; (ii) a list of sixteen prospective California based clients; (iii) a compilation of more than 7,000 prospective and former clients, including information about policy renewal dates, premium amounts, submission dates and expiration dates; and (iv) two 2015 invoices showing the insurance premiums paid by a JLT client and the commission percentages paid to JLT.

57. The files that were ostensibly returned on behalf of Mr. Morcos were: (i) a list of clients (including Clients A, B and C), prospects and former clients assigned to various members of JLT's Real Estate and Property Practices, including Mr. Smith and Mr. Morcos; (ii) a template exposure workbook used by members of JLT's Real Estate and Property Practices to summarize client entities and risks; (iii) a property proposal template used by members of JLT's Real Estate and Property Practices to summarize client insurance placements; (iv) a sample timeline for insurance renewals; (v) a completed template summary of insurance workbook used by members of JLT's Real Estate and Property Practices to track coverage; (vi) a completed workers' compensation net rate analysis used by members of JLT's Real Estate and Property Practices; and (vii) a template property and casualty submission to insurance carriers.

58. Mr. Pestana and Mr. Morcos have not returned the USB drives they used to download these documents. They have also not returned documents Mr. Morcos downloaded regarding Client C and various other JLT clients and/or JLT's protected information that they appear to have uploaded to their personal cloud storage accounts.

59. NFP's attorney also acknowledged that Mr. Smith downloaded and/or retained JLT's documents on the termination of his employment.

60. Ms. Sherman and Mr. Smith have not returned to JLT any of the documents that they downloaded and/or retained on the termination of their employment with JLT. Mr. Pestana, Ms.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

12.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC

Sherman, Mr. Smith, and Mr. Morcos have not returned all of JLT properly that they improperly downloaded and/or retained on the termination of their employment.

I declare under the laws of the United States of America and the laws of the State of California that the foregoing is true and correct.

I hereby attest that I have on file all holographic signatures corresponding to any signatures indicated by a conformed signature (/S/) within this e-filed document and other signatories listed, and on whose behalf the filing is submitted, concur in the filing's content and have authorized the filing.

Dated: May 11, 2019

/s/ Stephanie Nallen

FIRMWIDE:164278349.1 059121.1000

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

13.   Case No. 3:19-cv-02427

Declaration Of Stephanie Nallen In Support Of Ex Parte Application For TRO, Expedited Discovery, And OSC