1  BENJAMIN A. EMMERT, Bar No. 212157
   LITTLER MENDELSON, P.C.
2  50 West San Fernando Street, 7th Floor
   San Jose, CA  95113.2303
3  Telephone:  408.998.4150
   Fax No.: 408.288.5686
4  E-mail: bemmert@littler.com

5  DOUGLAS A. WICKHAM, Bar No. 127268
   HELEN BRAGINSKY, Bar No. 282359
6  LITTLER MENDELSON
   A Professional Corporation
7  633 West Fifth Street, 63rd Fl.
   Los Angeles, California 90071.3541
8  Telephone:       213.443400
   Fax No.:         213.443.4299
9  E-mail:dwickham@littler.com
   E-mail:hbraginsky@littler.com
10
   Attorneys for Plaintiff
11 JLT SPECIALTY INSURANCE SERVICES INC.

12

13              UNITED STATES DISTRICT COURT

14           NORTHERN DISTRICT OF CALIFORNIA

15               SAN FRANCISCO DIVISION

16 JLT SPECIALTY INSURANCE SERVICES          Case No. 3:19-CV-02427-MMC
   INC., a Delaware corporation,
17
                   Plaintiff,               **FIRST AMENDED COMPLAINT FOR
18                                           DAMAGES AND INJUNCTIVE RELIEF**
          v.
19
20 GARY PESTANA, an individual; SARAH
   SHERMAN, an individual; DUSTIN SMITH,
21 an individual; and RAMY MORCOS, an
   individual,
22
                   Defendants.
23

24

25

26

27

28

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA  95113.2303
408.998.4150

1.

Plaintiff JLT SPECIALTY INSURANCE SERVICES INC. ("JLT" or the "Company") for its First Amended Complaint alleges as follows:

### NATURE OF THE ACTION

1.      JLT brings this action against its former employees, Defendants Gary Pestana ("Pestana"), Sarah Sherman ("Sherman"), Dustin Smith ("Smith"), and Ramy Morcos ("Morcos") (collectively "Defendants") to address their unlawful misappropriation by acquisition, disclosure, and use of JLT's confidential, proprietary and trade secret information and to prevent further misappropriation of such information as well as to address the Defendants' breaches of certain agreements that they entered into with JLT.

2.      Defendants are all former JLT employees that worked in JLT's Real Estate Practice group or its Property & Casualty Practice group. Defendants were all given access to JLT's confidential, proprietary, and trade secret information as part of their employment with JLT so that they could perform their job duties for JLT and use the protected information for JLT's exclusive benefit. During their employment with JLT, the Defendants used such information in the performance of their job duties for JLT.

3.      To prevent Defendants from using JLT's confidential, proprietary, and trade secret information for any unauthorized purpose – *i.e.* for any purpose other than in the performance of their job duties and for JLT's exclusive benefit - JLT required, and the Defendants agreed to be bound by certain confidentiality obligations. Pursuant to these confidentiality obligations, the Defendants agreed to, among other items, keep JLT's confidential, proprietary, and trade secret information strictly confidential and to only use it in the performance of their job duties for JLT and only for JLT's benefit. The Defendants also agreed to return all of JLT's property, including all of its protected information, on or before the termination of their employment and further agreed to not retain any of JLT's property after their employment ended. Each of the Defendants breached these obligations.

4.      In or about at least March 2019, the Defendants had conversations with JLT's direct competitor, NFP Property & Casualty Services, Inc. ("NFP"). JLT is informed and believes and on that basis alleges that these conversations involved Defendants, as well as other members of

2.

JLT's Real Estate Practice group or its Property & Casualty Practice group that reported to Defendant Pestana and/or Sherman – including Defendants Smith and Morcos - leaving JLT and joining NFP.  JLT was not aware the Defendants were having these conversations.  In fact, JLT was not aware the Defendants and certain members of the Real Estate Practice group or its Property & Casualty Practice group were considering leaving JLT and joining NFP until after they had apparently secured employment with NFP and all announced their intent to resign *en masse*. Defendant Pestana left JLT on March 21, 2019; Defendant Sherman left JLT on March 20, 2019; Defendant Smith left JLT on March 22, 2019; and Defendant Morcos left JLT on March 26, 2019.

     5.     Because the timing and the structure of the resignations was suspicious, JLT undertook an inspection of the Defendants' smart phones and laptop computers following their resignations.  As a result of this investigation, JLT learned:

- Between March 11, 2019, and his last day of employment on March 21, 2019, Defendant Pestana connected at least four USB drives and an iPhone to his JLT issued laptop computer and downloaded a number of documents containing JLT's confidential, proprietary, and trade secret information;

- Between March 14, 2019, and her last day of employment on March 20, 2019, Defendant Sherman connected various USB devices and her iPhone to JLT's company issued laptop computer and also downloaded a number of documents containing JLT's confidential, proprietary, and trade secret information;

- Between March 20, 2019, and his last day of employment at JLT on March 26, 2019, Defendant Morcos also attached a number of USB drives, an iPhone, and an iPad to his company issued computer and downloaded a number of documents containing JLT's confidential, proprietary, and trade secret information;

- Defendant Smith also unlawfully downloaded a number of documents containing JLT's confidential, proprietary, and trade secret information shortly before he left JLT.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

FIRST AMENDED COMPLAINT

6.     It appears the Defendants attempted to hide their unlawful actions because they either wiped their electronic devices before they were returned to JLT and/or failed to provide JLT the passwords to access the devices.

7.     JLT did not authorize the Defendants to take its protected information.  In fact, their doing so is in direct violation of their confidentiality agreements they agreed to be bound by as a condition of their employment at JLT.  Moreover, they have not returned the information, again in direct violation of their agreements with JLT.

8.     In addition to the theft of JLT's property, JLT has also learned that the Defendants have been using its protected information in their new employment with NFP to unfairly compete with JLT to the benefit of NFP and to JLT's detriment.  While JLT has sent cease and desist letters to the Defendants, they have not returned all of JLT's stolen information and appear to be continuing to use it for NFP's benefit and to unlawfully compete with JLT.  Through this action JLT seeks injunctive relief to remedy the past misappropriation of its protected information and contractual breaches; injunctive relief to prevent further misappropriation and contractual violations; and damages to redress the harm JLT has already suffered.

## THE PARTIES AND OTHER PERTINENT ENTITIES

9.     At all times relevant to the matters alleged in the Complaint, JLT was and is a corporation organized and existing under the laws of the State of Delaware with its principal place of business located at 225 West Wacker Drive, Chicago, IL 60606.  JLT is a wholly-owned subsidiary of Jardine Lloyd Thompson Group plc, and an indirect subsidiary of Marsh & McLennan Companies Inc.  JLT is a leading provider of insurance, reinsurance, employee benefits advice and brokerage services.

10.     Defendant Sarah Sherman is an individual, residing, on information and belief, in San Francisco, California.  Defendant Sherman was an employee of JLT from about October 22, 2015, until she voluntarily resigned without prior notice on about March 20, 2019.  JLT is informed and believes and on that basis alleges, Defendant Sherman started working for NFP immediately, or shortly after she voluntarily resigned from JLT.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

4.

FIRST AMENDED COMPLAINT

11.     Defendant Gary Pestana is an individual, residing, on information and belief, in South Pasadena, California.  Defendant Pestana was an employee of JLT from about August 28, 2015, until he voluntarily resigned without prior notice on about March 21, 2019.  JLT is informed and believes and on that basis alleges, Defendant Pestana started working for NFP immediately, or shortly after he voluntarily resigned from JLT.

12.     Defendant Dustin Smith is an individual, residing, on information and belief, in Redondo Beach, California.  Defendant Smith was an employee of JLT from about January 4, 2016, until he voluntarily resigned without prior notice on about March 21, 2019.  At the time he voluntarily terminated his employment with JLT, Defendant Smith worked for JLT as a Senior Vice President in JLT's Real Estate Practice group.  JLT is informed and believes and on that basis alleges, Defendant Smith started working for NFP immediately, or shortly after he voluntarily resigned from JLT.

13.     Defendant Ramy Morcos is an individual, residing, on information and belief, in Los Angeles, California.  Defendant Morcos was an employee of JLT from about November 5, 2015, until he voluntarily resigned without prior notice on about March 26, 2019.  At the time he voluntarily terminated his employment, Defendant Morcos worked for JLT as a Vice President in JLT's Real Estate Practice group.  JLT is informed and believes and on that basis alleges, Defendant Morcos started working for NFP immediately, or shortly after he voluntarily resigned from JLT.

14.     NFP is a New York corporation with its principal place of business located at 707 Westchester Avenue, White Plains, NY 10604.  NFP is a subsidiary of National Financial Partners Corp.  Like, JLT, NFP provides insurance, reinsurance, employee benefits advice and brokerage services.  JLT and NFP are direct competitors in this marketplace.

## JURISDICTION AND VENUE

15.     This Court has original jurisdiction of this action pursuant to the Defend Trade secrets Act, 18 U.S.C. § 1836(c) and 28 U.S.C. § 1331.  This Court has supplemental jurisdiction over the other claims asserted herein pursuant to 28 U.S.C. § 1367.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

FIRST AMENDED COMPLAINT

16.     This Court also has original subject matter jurisdiction over this action pursuant to 28 U.S.C. § 1332 because this is an action between citizens of different states, and the amount in controversy exceeds $75,000 exclusive of interests and costs.

17.     Venue is proper in this District pursuant to 28 U.S.C. § 1391(b) and N.D. Cal. L.R. 3.2(c) because a substantial part of the events or omissions giving rise to the claims herein arose in this District.

<u>**FACTUAL ALLEGATIONS**</u>

18.     JLT is a leading provider of insurance, reinsurance, employee benefits advice and brokerage services.  In order to provide the best service possible to its clients, JLT created practice groups that specialize in specific industries.  As pertinent to this action, JLT created a Real Estate Practice Group and a separate Property & Casualty Practice Group.

19.     JLT's Real Estate Practice Group focuses on the insurance and risk management needs of commercial, habitational, residential and industrial property owners, operators, managers, investors and developers.

20.     JLT's Property & Casualty Practice Group uses technical expertise, market-leading tools and resources, global platform, and carrier relationships to design custom solutions for its clients looking for property and casualty insurance solutions.

21.     As a result of its hard work and customer-focused approach, JLT has acquired and developed a vast store of invaluable confidential and proprietary information, including, *inter alia*, detailed customer and prospective customer lists, as well as information regarding its customers' particular current and potential future needs; JLT's unique marketing and servicing strategies, programs, procedures, and techniques; the abilities and compensation of its employees, agents and independent contractors; the criteria and formula used by JLT in pricing its insurance/reinsurance products and claims management, loss control and information management services; the structure and pricing of special insurance/reinsurance packages that the Company as negotiated with various underwriters; the identity, authority and responsibilities of key contacts at customers and potential customers; the composition and organization of client's businesses; the peculiar risks inherent in client's operations; information regarding client's existing

insurance/reinsurance coverage policy expiration dates; premium amounts; commission rates; risk management service arraignments; loss histories; information regarding client's insurance/reinsurance preferences; and other such non-public information.

22.     JLT's confidential and proprietary customer information is not generally known or utilized in the industry and therefore has independent economic value.  JLT gains a competitive advantage from this information and the fact that it is not generally known or utilized in the industry.

23.     JLT takes significant legal and technical measures to guard and protect its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses.  These measures include, but are not limited to, informing its employees that its confidential and proprietary information is confidential and is not to be disclosed outside of the Company or used for the benefit of any individual or entity other than JLT, password protection for access to its computers and computer networks, and limiting access to its confidential and proprietary information to those who have a legitimate need to know such information.

24.     JLT also protects its confidential and proprietary information from theft, misappropriation, and other unauthorized disclosures and/or uses by requiring its employees, as a condition of their employment, to agree to and be bound by written confidentiality agreements and agreements to return its property on the termination of their employment.

25.     JLT included a confidentiality agreement and an agreement requiring its employees return its property on the termination of their employment in its Employee Handbook ("Employee Handbook Confidentiality Agreement" and "Employee Handbook Return Agreement").

26.     JLT's Employee Handbook Confidentiality Agreement states, in pertinent part:

> 42.1   It is important that all Sensitive Company Information (defined below) and client information be treated with discretion and confidentiality. As an employee of JLT, there should be no discussion, photocopying, duplication, or revealing of Sensitive Company Information or client information that is not generally known to the public in any form to anyone outside the Company. Sensitive Company Information and client information obtained as a result of employment with the Company and/or contact with clients is considered proprietary and can only be used in the course

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

of employment with JLT. Any unauthorized use, collection, copying, removal, or transfer of this information in any manner that is not in the best interest of the Company will result in disciplinary action, up to and including unpaid suspension and termination from employment and/or other legal action. This policy applies to internal documents and records, as well as any information concerning clients, vendors, or suppliers.

42.3 . . . Sensitive Company Information also includes, but is not limited to, trade secrets or confidential information relating to products, services, processes, know-how, marketing data, accounting records, pricing, business plans and strategies, and negotiations and contracts.

25. JLT Employee Handbook Return Agreement states, in pertinent part:

9.4 Employees must return all Company property no later than the last day of employment. Company property includes but is not limited to computer equipment (laptop, power cord, RSA, etc.); Company cell phone; Company tablet; Company security badge or key fob; Company credit card and Company files.

26. JLT also requires its employees to agree to be bound by a stand-alone confidentiality agreement and stand-alone agreement to return all of its confidential and/or trade secret information on the termination of their employment. ("Stand-Alone Confidentiality Agreement" and "Stand-Alone Return Agreement").

27. JLT's Stand-Alone Confidentiality Agreement states:

A. Non-Disclosure of Confidential Information and/or Trade Secrets

1. The Employee recognizes that by virtue of his/her employment (s)he will be granted access to confidential and proprietary data and other information of the Company or a Relevant Company which is not generally known either to its competitors or within the insurance/reinsurance industry (hereinafter referred to as "Confidential Information" and/or 'Trade Secrets").

2. Confidential Information and/or Trade Secrets includes, but is not limited to, data and other information relating to the Company's (or the Relevant Company's) unique marketing and servicing strategies, programs, procedures and techniques; the abilities and compensation of its employees, agents and independent contractors; the criteria and formula used by the Company or the Relevant Company in pricing its insurance/reinsurance products and claims management, loss control and information management services, the structure and pricing of special insurance/reinsurance packages that the Company has negotiated with various underwriters; lists of prospects compiled by the Company's management and research staff; the identity, authority and

responsibilities of key contacts at Company accounts; the composition and organization of Clients' (as defined in 111.B.4. below) businesses; the peculiar risks inherent in their operations; highly sensitive details concerning the structure, conditions and extent of their existing insurance/reinsurance coverage policy expiration dates; premium amounts; commission rates; risk management service arrangements; loss histories; details of the Company (or Relevant Company's) information technology systems and other data showing the particularized insurance/reinsurance requirements and preferences of Clients.

3.   The Employee acknowledges that this Confidential Information and/or Trade Secrets of the Company (or Relevant Company) is a valuable property of the Company, developed by the Company over a long period of time and at substantial expense.

4.   Accordingly, the Employee agrees that (s)he will not, at any time during his or her employment with the Company, divulge such Confidential Information and/or Trade Secrets, or make use of Confidential Information or Trade Secrets for his or her own purposes or the purposes of any person or entity other than the Company

28.   JLT's Stand-Alone Return Agreement states, in pertinent part:

II.   Employee's Obligations Upon Termination of Employment

1.   The Employee agrees that at the end of the Employee's employment with the Company, (s)he will promptly return to the Company all literature, correspondence, memoranda, reports, summaries, manuals, proposals, contracts, documents, computer disks and programs, computer hardware, and other materials which comprise or refer to the Company's Confidential Information and/or Trade Secrets as defined herein. The Employee further agrees he or she will not retain any copy, facsimile or note memorializing any such materials or the contents thereof. The Employee acknowledges and agrees that such materials are, and will remain, the exclusive property of the Company.

**Defendant Gary Pestana**

29.   Beginning in or about August 2015, JLT employed Defendant Gary Pestana as an Executive Vice President and Practice Leader of JLT's Real Estate Practice group based in JLT's Los Angeles, CA office.

30.   As a condition of his employment, Defendant Pestana expressly agreed to be bound by and comply with JLT's Employee Handbook Confidentiality Agreement, its Stand-Alone Confidentiality Agreement, its Employee Handbook Return Agreement, and its Stand-Alone Return Agreement.  In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

FIRST AMENDED COMPLAINT

1   information, or make use of such information for his own purposes or the purposes of another, for so

2   long as such information has not fallen into the public domain.  He also expressly agreed to return to

3   JLT all of JLT's property, including its protected information, no later than the last day of his

4   employment and to not retain any of JLT's information after his employment with JLT ended.

5          31.   As Executive Vice President and Practice Leader, Pestana was responsible for,

6   among other tasks, generating new client business and maintaining and growing business with

7   existing clients.

8          32.   Defendant Pestana relied on JLT's financial and internal resources, as well as

9   JLT's confidential, proprietary, and trade secret information, to generate business, service clients and

10  manage client relationships.  He developed client relationships by virtue of his employment and his

11  use of JLT's protected information, and with the support of an experienced team of JLT employees,

12  on whom he relied to carry out his job duties.

13         33.   Other members of JLT's Real Estate Practice included Dustin Smith, Senior

14  Vice President, Lesa Medeiros, Vice Present and Genevieve Lopez, Account Manager.  Each of

15  these employees were also subject to JLT's Employee Handbook Confidentiality Agreement, Stand-

16  Alone Confidentiality Agreement, Employee Handbook Return Agreement, and Stand-Alone Return

17  Agreement.

18         34.   Each of these employees reported to Defendant Pestana.

19         35.   Among the many clients Defendant Pestana serviced on behalf of JLT during

20  his employment at JLT and with the assistance of JLT's staff, resources, and confidential,

21  proprietary, and trade secret information, was a residential and commercial property developer

22  engaged in a joint venture to redevelop twenty-two acres of prime real estate in downtown Brooklyn,

23  NY, including 6 million square feet of residential space, 247,000 square feet of retail space, 336,000

24  square feet of office space and 8 acres of publicly accessible open space ("Client A").

25         36.   Defendant Pestana and his team also developed on behalf of JLT, with the

26  assistance of JLT's staff, resources, and confidential, proprietary, and trade secret information, a

27  client relationship with a large, publicly traded real estate investment trust that owns more than 20

28  million square feet of shopping centers ("Client B").

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

10.

FIRST AMENDED COMPLAINT

**Defendant Sarah Sherman**

37. Beginning in or about October 2015, JLT employed Defendant Sarah Sherman as a Senior Vice President in its Property & Casualty Practice group based in JLT's San Francisco, CA office.

38. JLT later promoted Sherman to Executive Vice President and Practice Leader of its Property & Casualty Practice group. She held this position until she voluntarily resigned on March 20, 2019.

39. As a condition of her employment, Defendant Sherman expressly agreed to be bound by and comply with JLT's Employee Handbook Confidentiality Agreement, its Stand-Alone Confidentiality Agreement, its Employee Handbook Return Agreement, and its Stand-Alone Return Agreement. In doing so, she agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for her own purposes or the purposes of another, for so long as such information has not fallen into the public domain. She also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of her employment and to not retain any of JLT's information after her employment with JLT ended.

40. As Executive Vice President and Practice Leader, Sherman was responsible for, among other tasks, producing new client business and maintaining and growing business with existing clients.

41. Defendant Sherman relied on JLT's financial and internal resources, as well as JLT confidential, proprietary, and trade secret information, to generate business, service clients and manage client relationships. She developed client relationships by virtue of her employment and her use of JLT's protected information and with the support of an experienced team of JLT employees, on whom she relied to carry out her job duties.

42. Other members of JLT's Property Practice who reported to Defendant Sherman included Joshua Forbes, Senior Vice President, Timothy Edwards, Senior Vice President, Margaret Martinez, Assistant Vice President, Jason McCarrick, Assistant Vice President, Hermilia Martinez, Senior Account Specialist and Stephanie Olloqui, Account Manager. Each of these employees were also subject to JLT's Employee Handbook Confidentiality Agreement, Stand-Alone

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

Confidentiality Agreement, Employee Handbook Return Agreement, and Stand-Alone Return Agreement.

43.     Defendant Sherman and her team worked with Defendant Pestana and his team to develop and service Client A and Client B on behalf of JLT.

**Defendant Dustin Smith**

44.     Beginning in or about January 2016, JLT employed Defendant Smith as a Vice President in its Real Estate Practice group based in JLT's Los Angeles, CA office.

45.     As a condition of his employment, Defendant Smith expressly agreed to be bound by and comply with JLT's Employee Handbook Confidentiality Agreement, its Stand-Alone Confidentiality Agreement, its Employee Handbook Return Agreement, and its Stand-Alone Return Agreement.  In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain.  He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended.

46.     As Senior Vice President, Smith was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients.

47.     Defendant Smith relied on JLT's financial and internal resources, as well as JLT confidential, proprietary, and trade secret information, to generate business, service clients and manage client relationships.  He developed client relationships by virtue of his employment, and with the use of JLT's protected information and the support of an experienced team of JLT employees, on whom he relied to carry out his job duties.

48.     Defendant Smith reported to Defendant Pestana during his employment with JLT.

49.     Defendant Smith worked with Defendant Pestana to develop and service Client A and Client B on behalf of JLT.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

FIRST AMENDED COMPLAINT

**Defendant Ramy Morcos**

50.　Beginning in or about October 2015, JLT employed Defendant Morcos as a Vice President in its Real Estate Practice group based in JLT's Los Angeles, CA office.

51.　As a condition of his employment, Defendant Morcos expressly agreed to be bound by and comply with JLT's Employee Handbook Confidentiality Agreement, its Stand-Alone Confidentiality Agreement, its Employee Handbook Return Agreement, and its Stand-Alone Return Agreement.　In doing so, he agreed not to divulge JLT's confidential, proprietary and/or trade secret information, or make use of such information for his own purposes or the purposes of another, for so long as such information has not fallen into the public domain.　He also expressly agreed to return to JLT all of JLT's property, including its protected information, no later than the last day of his employment and to not retain any of JLT's information after his employment with JLT ended.

52.　As Vice President, Defendant Morcos was responsible for, among other tasks, generating new client business and maintaining and growing business with existing clients.

53.　Defendant Morcos relied on JLT's financial and internal resources, as well as JLT confidential, proprietary, and trade secret information, to generate business, service clients and manage client relationships. He developed client relationships by virtue of his employment, and with the support of an experienced team of JLT employees, on whom he relied to carry out his job duties.

54.　Defendant Morcos reported to Defendant Pestana during his employment with JLT.

**Defendants' Unlawful Conduct**

55.　On or about March 1, 2019, Defendant Pestana had lunch with one or more representatives of NFP.

56.　Upon information and belief, Defendant Pestana discussed the names of his clients and colleagues with NFP and about him and other JLT employees, including members of JLT's Real Estate Practice group and/or its Property & Casualty Practice group, leaving JLT and joining NFP.

57.　Upon information and belief, following his lunch meeting with NFP, Defendant Pestana spoke with one or more members of JLT's Real Estate and Property Practice

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

group about moving to NFP.

58.    Upon information and belief, other members of JLT's Real Estate and Property Practice group also spoke to their colleagues about moving to NFP.

59.    JLT is informed and believes and on that basis alleges that nine (9) JLT employees, seven (7) who worked in JLT's Real Estate Practice group and two (2) who worked in JLT's Property & Casualty Practice, in addition to the four defendants in this action, all agreed to resign from JLT *en masse* and start working for NFP.

60.    JLT is also informed and believes and on that basis alleges that, in preparation for their move from JLT to its direct competitor, several of these individuals, including the Defendants, unlawfully accessed JLT's computer system and downloaded JLT's confidential, proprietary, and trade secret information in violation of their Employee Handbook Confidentiality Agreement and their Stand-Alone Confidentiality Agreement.

61.    For example, between March 11, 2019 and March 21, 2019, Defendant Pestana connected at least four USB drives and an iPhone to his JLT computer and accessed a Dropbox.com account from that computer and downloaded JLT's confidential, proprietary, and trade secret information, including JLT's customer and potential customer information and other protected information.

62.    On or about March 14 and 21, 2019, Defendant Pestana also accessed JLT's confidential, proprietary, and trade secret files related to Client B, and numerous broker of records letters.

63.    Between March 14, 2019 and March 20, 2019, Defendant Sherman connected her iPhone and numerous USB devices and drives to her JLT computer and downloaded JLT's confidential, proprietary, and trade secret information, including documents entitled "January_February_2019_Premium_Rate_Report_Summary SMS.pptx," "January_February_2019_Premium_Rate_Report_Real Estate SMS.pptx," and "January_February_2019_Premium_Rate_Report_Property SMS.pptx," and information related to the coverage, losses, renewal presentations and policies of a large hospitality client.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

14.

FIRST AMENDED COMPLAINT

64.     Between March 20, 2019 and his March 26, 2019 resignation, Defendant Morcos connected at least 6 USB drives, an iPhone and an iPad to his JLT computer.

65.     Defendant Morcos downloaded to his various USB drives client pricing, audit, loss, risk and coverage information related to numerous JLT clients, including (i) a real estate investment, company based in Los Angeles, California ("Client C"); (ii) a general contracting and construction company in Chino, CA; (iii) a real estate investment and construction company based in Indianapolis, IN; and (iv) a second a real estate investment, management company based in Los Angeles, California.

66.     Using his JLT computer, Defendant Morcos also accessed personal Dropbox and Google Drive cloud storage accounts, where, upon information and belief, he uploaded JLT's confidential information to his personal accounts.

67.     JLT is informed and believes that the Defendants attempted to hide their unlawful taking of JLT's information by deleting, or attempting to delete, their Internet Explorer temporary files and browsing histories from their JLT issued computers.

68.     JLT is informed and believes that Defendant Pestana and Defendant Sherman, and four other former JLT employees who left JLT as part of the mass resignation and went to work for NFP (Jessica Nelson, Stephani Ollogui, Maggie Martinez and Jason McCarrick), attempted to hide their unlawful taking JLT's protected information by wiping their JLT-issued iPhones and iPads prior to returning them to JLT.

69.     Additionally, JLT is informed and believes that Defendant Morcos and Defendant Smith attempted to hide their unlawful taking of JLT's protected information by failing to provide JLT with their passcodes, which would allow JLT to access the data on their JLT-issued devices.

70.     Upon information and belief, Defendants Pestana, Sherman, and Morcos downloaded and/or uploaded JLT's confidential and propriety information to external drives and/or cloud storage accounts for use in their new jobs with NFP and for NFP's benefit.

71.     Upon information and belief, NFP knew, or should have known, about these downloads and uploads.

LITTLER MENDELSON, P.C.
30 W. San Fernando, 7th Floor
San Jose, CA 95113 2303
409.998.4150

15.

72.     In addition to unlawfully taking JLT's confidential, proprietary, and trade secret information, Defendants also unlawfully used JLT's protected information to solicit JLT's clients to switch from JLT to NFP. For example, on March 19, 2019, Vincent Zegers, a Senior Vice President in JLT's Real Estate Practice who assisted Defendant Pestana and Defendant Smith with Client A, emailed Defendant Pestana and Defendant Smith about Client A. He wrote, in part, "Any update? It's pretty quiet which worries me a bit......."

73.     That same day, just two days before Defendant Smith resigned and one day before Defendant Pestana's resignation, Defendant Smith responded "[m]eeting with them tomorrow. W[ill] fill you in after the meeting."

74.     Defendant Smith never filled Zegers in, as he promised in his email.

75.     The day after the meeting (March 21, 2019) Client A's Senior Vice President and General Counsel emailed Defendant Pestana, Defendant Smith, Jessica Nelson and Jason McCarrick confirming his knowledge that the employees were leaving JLT and transitioning to NFP.

76.     He wrote, in part: "Dear JLT Team: I have a hopefully quick request (and apologies knowing that you are swamped with the transition)."

77.     That same day, after Nelson responded to Client A's inquiry, Client A's Senior Vice President and General Counsel joked "Thank you for the Q[I]CK turnaround . . . (They don't do that at Marsh!)," referring to JLT's parent company.

78.     Defendant Pestana resigned that day (March 21, 2019).

79.     Defendant Smith and Nelson resigned from JLT on the following day (March 22, 2019).

80.     On March 22, 2019, Client A's Senior Vice President and General Counsel sent a letter "confirm[ing] the appointment, on an exclusive basis, [of] NFP Property & Casualty Services, Inc. (NFP) as broker of record effective March 22, 2019." Client A carbon copied Defendant Pestana on its letter.

81.     In addition, on March 22, 2019, Defendant Pestana's first day of employment at NFP, at 9:07 a.m., Defendant Pestana emailed the Managing Director of Client C a template broker of record letter.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

82.     Defendant Pestana wrote to Client C's Managing Director, "Just need on your letterhead, signed and returned."

83.     Defendant Pestana carbon copied his email to Stephanie Olloqui, who resigned her employment with JLT the previous day, at her new NFP email address.

84.     Defendant Pestana also carbon copied his email to Defendant Morcos at ramy.morcos@nfp.com, even though Defendant Morcos was employed by JLT until his resignation on March 26, 2019 (4 days later).

85.     By letter dated March 22, 2019, JLT received notification that Client C submitted a broker of record letter to its insurance carrier appointing a new broker.

86.     JLT received the letter regarding Client C less than two weeks after Defendant Morcos accessed and downloaded files related to Client C's pricing and coverage information.

87.     Upon information and belief, Client C's new broker is NFP.

88.     Also by letter dated March 22, 2019, Client B's Chief Executive Officer "confirm[ed] the appointment, on an exclusive basis, [of] NFP Property & Casualty Services, Inc. (NFP) as broker of record effective March 22, 2019." Client B carbon copied Defendant Pestana on its letter.

89.     Other than the signature blocks and the letterhead, the letter from Client B was identical to the letter JLT received from Client A.

90.     Upon information and belief, both letters were drafted by Defendant Pestana after he solicited business from both Client A and Client B on behalf of NFP.

91.     Also on or about March 22, 2019, JLT received notification that a hospitality client in Arizona, who previously was serviced by JLT through the Defendants, submitted a broker of record letter to its insurance carrier appointing a new broker ("Client D").

92.     Upon information and belief, the Arizona-based hospitality client now works with NFP as its exclusive broker of record.

93.     By letter dated March 27, 2019, JLT received notification confirming that a San Francisco based online direct home seller, who previously was serviced by Defendant Sherman, had appointed NFP, "on an exclusive basis . . . as broker of record effective March 27, 2019"

17.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113 2303
408.998.4150

("Client E").

94.     The March 27th letter from the San Francisco client was nearly identical to the letters JLT received from Clients A and B.

95.     Although Defendant Sherman provided some services to the San Francisco based online home seller, she did not originate or produce the relationship for JLT.

96.     On or about April 30, 2019, JLT received a letter notification from a condominium client in Bronx, New York, "confirm[ing] the appointment, on an exclusive basis, [of] NFP Property & Casualty Services, Inc. (NFP) as broker of record effective April 25, 2019" ("Client F").

97.     The letter which was carbon copied to Defendant Smith was nearly identical to the letters JLT received from Client A, Client B and the San Francisco online home seller.

98.     Upon information and belief, the departures of these clients were the result of the improper acquisition, use, and/or disclosure of JLT's confidential, proprietary, and trade secret information by Defendants, in violation of their Employee Handbook Confidentiality Agreements and Stand-Alone Confidentiality Agreement.

99.     NFP knew or should have known of the Defendants' confidentiality obligations to JLT at or near the time Defendants commenced their employment with NFP.

100.     NFP knew or should have known that one or more the Defendants were using JLT's confidential, proprietary, and/or trade secret information to solicit JLT's clients on NFP's behalf in violation of their Employee Handbook Confidentiality Agreements and Stand-Alone Confidentiality Agreement.

101.     Between March 25, 2019 and March 27, 2019, Aubrie Ekman, Associate General Counsel for JLT, sent letters to Defendants Pestana, Sherman, Smith, and Morcos reminding them of their continuing confidentiality obligations to JLT.

102.     The Ekman letters also requested that the Defendants Pestana, Sherman, Smith, and Morcos return JLT's "materials, documents, or information in any form, paper, electronic, or otherwise, or copies thereof" to JLT and provided an address to which they could send the materials, documents, or information.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

18.

FIRST AMENDED COMPLAINT

103.   Defendants Pestana, Sherman, Smith, and Morcos never acknowledged receipt of the Ekman letter, nor did any of they return USB drives or other external media drives used to store JLT information.

104.   On April 26, 2019, attorneys for NFP acknowledged that Defendants Pestana and Morcos downloaded files from their JLT computers and/or JLT systems onto USB drives and ostensibly returned eleven files.

105.   On behalf of Defendant Pestana, NFP's attorney ostensibly returned: (i) a MS PowerPoint presentation prepared for a prospective client in October 2015, outlining capabilities and expertise in construction; (ii) a list of sixteen prospective California based clients; (iii) a compilation of more than 7,000 prospective and former clients, including information about policy renewal dates, premium amounts, submission dates and expiration dates; and (iv) two 2015 invoices showing the insurance premiums paid by a JLT client and the commission percentages paid to JLT.

106.   On behalf of Defendant Morcos, NFP's attorney ostensibly returned: (i) a list of clients (including Clients A, B and C), prospects and former clients assigned to various members of JLT's Real Estate and Property Practices, including Defendant Smith and Defendant Morcos; (ii) a template exposure workbook used by members of JLT's Real Estate and Property Practices to summarize client entities and risks; (iii) a property proposal template used by members of JLT's Real Estate and Property Practices to summarize client insurance placements; (iv) a sample timeline for insurance renewals; (v) a completed template summary of insurance workbook used by members of JLT's Real Estate and Property Practices to track coverage; (vi) a completed workers' compensation net rate analysis used by members of JLT's Real Estate and Property Practices; and (vii) a template property and casualty submission to insurance carriers.

107.   Neither NFP nor Defendants Pestana and Morcos returned the USB drives Defendants Pestana and Morcos used to download these documents.

108.   Neither NFP nor Defendants Pestana and Morcos returned documents Defendant Morcos downloaded regarding Client C and various other JLT clients.

109.   Neither NFP nor Defendants Pestana and Morcos returned documents Defendants Pestana and/or Morcos uploaded to their personal cloud storage accounts.

19.

110.    Neither NFP nor any of the Defendants returned USB drives, external storage devices, materials, documents or information from any other individual Defendant.

**FIRST CLAIM FOR RELIEF**
**Breach Of Contract**
**(Employee Handbook Confidentiality Agreement)**
**(Against Defendants Pestana, Sherman, Smith, and Morcos)**

111.    JLT realleges and incorporates by reference paragraphs 1 through 110 as though fully set forth herein.

112.    As a condition of their employment and/or continuing employment with JLT, Defendants Pestana, Sherman, Smith, and Morcos agreed to be bound by the Employee Handbook Confidentiality Agreement.

113.    The Employee Handbook Confidentiality Agreement prohibited Defendants Pestana, Sherman, Smith, and Morcos from, among other acts, using, revealing or divulging any of JLT's confidential, proprietary and/or trade secret information to any person not authorized by JLT to receive such information or for any purpose other than in the performance of their job duties for JLT and for JLT's benefit.

114.    As set forth above, Defendants Pestana, Sherman, Smith, and Morcos have breached, and will continue to breach, the Employee Handbook Confidentiality Agreement.

115.    JLT has performed all, or substantially all, of its significant obligations under the Employee Handbook Confidentiality Agreement or was excused from performing its obligations that the Employee Handbook Confidentiality Agreement required.

116.    As a proximate result of Defendants Pestana, Sherman, Smith, and Morcos breaches of the Employee Handbook Confidentiality Agreement, JLT has suffered and will continue to suffer substantial damages, the exact amount to be determined at trial.

117.    Defendants Pestana, Sherman, Smith, and Morcos' conduct and breaches described above, will, unless and until enjoined and restrained by an order of this Court, cause great and irreparable injury to JLT's business in that it will enable Defendants Pestana, Sherman, and Morcos and NFP, by and through Defendants Pestana, Sherman, Smith, and Morcos' unlawful actions, to unfairly compete with JLT, to interfere with JLT's business relationships with its

20.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

1   customers, and to interfere with JLT's prospective business opportunities.   JLT has no adequate

2   remedy at law for these injuries because the injuries to JLT's business relations and standing in the

3   business community and the loss of potential business advantage cannot adequately be compensated

4   through monetary damages.   As a result, this Court should compel specific performance of

5   Defendants Pestana, Sherman, Smith, and Morcos' contractual obligations.

6   WHEREFORE, JLT prays for judgment as set forth below.

7   **SECOND CLAIM FOR RELIEF**
    **Breach Of Contract**
8   **(Employee Handbook Return Agreement)**
    **(Against Defendants Pestana, Sherman, Smith, and Morcos)**
9

10   118.   JLT realleges and incorporates by reference paragraphs 1 through 117 as

11   though fully set forth herein.

12   119.   As a condition of their employment and/or continuing employment with JLT,

13   Defendants Pestana, Sherman, Smith, and Morcos agreed to be bound by the Employee Handbook

14   Return Agreement.

15   120.   The Employee Handbook Return Agreement required Defendants Pestana,

16   Sherman, Smith, and Morcos return all of JLT's property, including its confidential, proprietary,

17   and/or trade secret information on or before the termination of their employment and prohibited

18   them from retaining any of JLT's property after their employment ended.

19   121.   As set forth above, Defendants Pestana, Sherman, Smith, and Morcos have

20   breached, and will continue to breach, the Employee Handbook Return Agreement by failing to

21   return JLT's property, including its protected information.

22   122.   JLT has performed all, or substantially all, of its significant obligations under

23   the Employee Handbook Return Agreement or was excused from performing its obligations that the

24   Employee Handbook Return Agreement required.

25   123.   As a proximate result of Defendants Pestana, Sherman, Smith, and Morcos

26   breaches of the Employee Handbook Return Agreement, JLT has suffered and will continue to suffer

27   substantial damages, the exact amount to be determined at trial.

28   124.   Defendants Pestana, Sherman, Smith, and Morcos' conduct and breaches

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

21.

1    described above, will, unless and until enjoined and restrained by an order of this Court, cause great

2    and irreparable injury to JLT's business in that it will enable Defendants Pestana, Sherman, Smith,

3    and Morcos and NFP, by and through Defendants Pestana, Sherman, Smith, and Morcos' unlawful

4    actions, to unfairly compete with JLT, to interfere with JLT's business relationships with its

5    customers, and to interfere with JLT's prospective business opportunities.   JLT has no adequate

6    remedy at law for these injuries because the injuries to JLT's business relations and standing in the

7    business community and the loss of potential business advantage cannot adequately be compensated

8    through monetary damages.   As a result, this Court should compel specific performance of

9    Defendants Pestana, Sherman, Smith, and Morcos' contractual obligations.

WHEREFORE, JLT prays for judgment as set forth below.

### THIRD CLAIM FOR RELIEF
**Breach Of Contract**
**(Stand-Alone Confidentiality Agreement)**
**(Against Defendants Pestana, Sherman, Smith, and Morcos)**

14        125.   JLT realleges and incorporates by reference paragraphs 1 through 124 as

15    though fully set forth herein.

16        126.   As a condition of their employment and/or continuing employment with JLT,

17    Defendants Pestana, Sherman, Smith, and Morcos agreed to be bound by the Stand-Alone

18    Confidentiality Agreement.

19        127.   The Stand-Alone Confidentiality Agreement prohibited Defendants Pestana,

20    Sherman, Smith, and Morcos from, among other acts, using, revealing or divulging any of JLT's

21    confidential, proprietary and/or trade secret information to any person not authorized by JLT to

22    receive such information or for any purpose other than in the performance of their job duties for JLT

23    and for JLT's benefit.

24        128.   As set forth above, Defendants Pestana, Sherman, Smith, and Morcos have

25    breached, and will continue to breach, the Stand-Alone Confidentiality Agreement.

26        129.   JLT has performed all, or substantially all, of its significant obligations under

27    the Stand-Alone Confidentiality Agreement or was excused from performing its obligations that the

28    Stand-Alone Confidentiality Agreement required.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113-2303
408.998.4150

FIRST AMENDED COMPLAINT

130.    As a proximate result of Defendants Pestana, Sherman, Smith, and Morcos breaches of the Stand-Alone Confidentiality Agreement, JLT has suffered and will continue to suffer substantial damages, the exact amount to be determined at trial.

131.    Defendants Pestana, Sherman, Smith, and Morcos' conduct and breaches described above, will, unless and until enjoined and restrained by an order of this Court, cause great and irreparable injury to JLT's business in that it will enable Defendants Pestana, Sherman, Smith, and Morcos and NFP, by and through Defendants Pestana, Sherman, Smith, and Morcos' unlawful actions, to unfairly compete with JLT, to interfere with JLT's business relationships with its customers, and to interfere with JLT's prospective business opportunities.    JLT has no adequate remedy at law for these injuries because the injuries to JLT's business relations and standing in the business community and the loss of potential business advantage cannot adequately be compensated through monetary damages.    As a result, this Court should compel specific performance of Defendants Pestana, Sherman, Smith, and Morcos' contractual obligations.

WHEREFORE, JLT prays for judgment as set forth below.

**FOURTH CLAIM FOR RELIEF**
**Breach Of Contract**
**(Stand-Alone Return Agreement)**
**(Against Defendants Pestana, Sherman, Smith, and Morcos)**

132.    JLT realleges and incorporates by reference paragraphs 1 through 131 as though fully set forth herein.

133.    As a condition of their employment and/or continuing employment with JLT, Defendants Pestana, Sherman, Smith, and Morcos agreed to be bound by the Stand-Alone Return Agreement.

134.    The Stand-Alone Return Agreement required Defendants Pestana, Sherman, Smith, and Morcos return all of JLT's property, including its confidential, proprietary, and/or trade secret information on or before the termination of their employment and prohibited them from retaining any of JLT's property after their employment ended.

135.    As set forth above, Defendants Pestana, Sherman, Smith, and Morcos have breached, and will continue to breach, the Stand-Alone Return Agreement by failing to return JLT's

23.

1  property, including its protected information.

2      136.   JLT has performed all, or substantially all, of its significant obligations under

3  the Stand-Alone Return Agreement or was excused from performing its obligations that the Stand-

4  Alone Return Agreement required.

5      137.   As a proximate result of Defendants Pestana, Sherman, Smith, and Morcos

6  breaches of the Stand-Alone Return Agreement, JLT has suffered and will continue to suffer

7  substantial damages, the exact amount to be determined at trial.

8      138.   Defendants Pestana, Sherman, Smith, and Morcos' conduct and breaches

9  described above, will, unless and until enjoined and restrained by an order of this Court, cause great

10  and irreparable injury to JLT's business in that it will enable Defendants Pestana, Sherman, Smith,

11  and Morcos and NFP, by and through Defendants Pestana, Sherman, Smith, and Morcos' unlawful

12  actions, to unfairly compete with JLT, to interfere with JLT's business relationships with its

13  customers, and to interfere with JLT's prospective business opportunities.   JLT has no adequate

14  remedy at law for these injuries because the injuries to JLT's business relations and standing in the

15  business community and the loss of potential business advantage cannot adequately be compensated

16  through monetary damages.   As a result, this Court should compel specific performance of

17  Defendants Pestana, Sherman, Smith, and Morcos' contractual obligations.

18      WHEREFORE, JLT prays for judgment as set forth below.

19  **FIFTHCLAIM FOR RELIEF**
    **Misappropriation of Trade Secrets**
20  **California Uniform Trade Secrets Act – Cal Civ. Code § 3426.1 *et seq.*)**
    **(Against Defendants Pestana, Sherman, Smith, and Morcos)**
21

22      139.   JLT realleges and incorporates by reference paragraphs 1 through 138 as

23  though fully set forth herein.

24      140.   JLT owns and possesses certain trade secret information. These trade secrets

25  are contained within the files taken by JLT, and include customer information, customer profiles,

26  etc..

27      141.   These trade secrets have actual or potential independent economic value from

28  not being generally known to the public or other persons who could obtain economic value from its

24.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113 2303
408.998.4150

FIRST AMENDED COMPLAINT

disclosure and/or use. For example, JLT's confidential account lists and customer profiles would enable JLT's competitors to identify and target companies interested in JLT's products and services, in order to better compete with JLT. Information regarding products or services JLT has provided its customers would allow JLT's competitors to more effectively compete with and poach JLT's business and business opportunities.

142.    JLT has undertaken robust efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.

143.    Defendants improperly acquired trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means and, on information and belief, Defendants are using and disclosing or threatening to use or disclose the trade secrets acquired by illegal means without JLT's knowledge and/or consent.

144.    Due to JLT's security measures, JLT's trade secrets are not readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

145.    In violation of JLT's rights, Defendants unlawfully acquired and attempted to conceal their unlawful acquisition of JLT's trade secrets in the improper and unlawful manner as alleged herein. Defendants' unlawful acquisition of JLT trade secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

146.    On information and belief, if Defendants are not enjoined, they will continue to use and/or disclose JLT's trade secrets for their own benefit and to JLT's detriment and/or threaten the use or disclosure of trade secrets.

147.    As the direct and proximate result of Defendants' conduct, JLT has suffered and will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because JLT's remedy at law is inadequate, JLT seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. JLT operates in a very competitive market and will continue to suffer irreparable harm absent injunctive relief.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

148.   As a further proximate result of the unlawful acquisition and use of JLT's trade secrets, Defendants were unjustly enriched. Additionally, JLT is entitled to an award of exemplary damages and attorney's fees under Cal. Civ. Code § 3426.3(c) for Defendants' willful and malicious misappropriation or threatened misappropriation of JLT's trade secrets.

**SIXTH CLAIM FOR RELIEF**
**Misappropriation of Trade Secrets**
**Defend Trade Secrets Act – 18 U.S.C. § 1836 *et seq.***
**(Against Defendants Pestana, Sherman, Smith, and Morcos)**

149.   JLT realleges and incorporates by reference paragraphs 1 through 148 as though fully set forth herein.

150.   JLT owns and possesses certain trade secret information. These trade secrets are contained within the files taken by JLT, and include customer information and information regarding JLT's products and services.

151.   These trade secrets have actual or potential independent economic value from not being generally known to the public or other persons who could obtain economic value from its disclosure and/or use. For example, JLT's confidential account lists and customer profiles would enable JLT's competitors to identify and target companies interested in JLT's products and services, in order to better compete with JLT. Information regarding products or services JLT has provided its customers would allow JLT's competitors to more effectively compete with and poach JLT's business and business opportunities.

152.   JLT has undertaken robust efforts that are reasonable under the circumstances to maintain the secrecy of the trade secrets at issue.

153.   Defendants improperly acquired trade secrets with knowledge of or reason to know that the trade secrets were acquired by improper means and, on information and belief, Defendants are using and disclosing or threatening to use or disclose the trade secrets acquired by illegal means without JLT's knowledge and/or consent.

154.   Due to JLT's security measures, JLT's trade secrets are not readily ascertainable through proper means by another person who can obtain economic value from the disclosure or use of the information.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA  95113.2303
408.998.4150

FIRST AMENDED COMPLAINT

155.    In violation of JLT's rights, Defendants unlawfully acquired and attempted to conceal their unlawful acquisition of JLT's trade secrets in the improper and unlawful manner as alleged herein. Defendants' unlawful acquisition of JLT trade secrets was intentional, knowing, willful, malicious, fraudulent, and oppressive.

156.    On information and belief, if Defendants are not enjoined, they will continue to use and/or disclose JLT's trade secrets for their own benefit and to JLT's detriment and/or threaten the use or disclosure of trade secrets.

157.    As the direct and proximate result of Defendants' conduct, JLT has suffered and will continue to suffer severe competitive harm, irreparable injury, and significant damages, in an amount to be proven at trial. Because JLT's remedy at law is inadequate, JLT seeks, in addition to damages, preliminary and permanent injunctive relief to recover and protect its confidential, proprietary, and trade secret information and to protect other legitimate business interests. JLT operates in a very competitive market and will continue to suffer irreparable harm absent injunctive relief.

158.    As a further proximate result of the unlawful acquisition and use of JLT's trade secrets, Defendants were unjustly enriched. Additionally, JLT is entitled to an award of exemplary damages and attorneys' fees under 18 U.S.C. §§ 1836(b)(3)(C), (D) for Defendants' willful and malicious misappropriation or threatened misappropriation of JLT's trade secrets

**SEVENTH CLAIM FOR RELIEF**
**(Violation Of Penal Code Section 502)**
**(Against Defendants Pestana, Sherman, Smith, and Morcos)**

159.    JLT realleges and incorporates by reference paragraphs 1 through 158 as though fully set forth herein.

160.    Pursuant to California Penal Code section 502, Defendants had a legal duty to refrain from knowingly accessing and without permission altering, damaging, deleting, destroying, or otherwise improperly using or causing to be used any data, computer, computer system, and/or computer services developed, owned, and/or leased by JLT.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

27.

FIRST AMENDED COMPLAINT

161.     JLT is informed and believes and on that basis alleges that the Defendants violated Penal Code section 502 by knowingly accessing, deleting, using, or causing to be used, and/or copying JLT's computer data, supporting documentation, and files.

162.     As a proximate result of the Defendants knowing violation of California Penal Code section 502, JLT has been damaged in an amount in excess of the jurisdictional minimum to be determined at trial.

WHEREFORE, JLT prays for judgment as set forth below.

## **PRAYER FOR RELIEF**

WHEREFORE, JLT prays for judgment against Defendants as follows:

(1)     For a preliminary and permanent order enjoining Defendants from committing any further acts of unfair competition and from utilizing confidential and proprietary information obtained by Defendants from JLT;

(2)     For an award of compensatory damages in an amount to be proven at trial;

(3)     For an award of the value of any and all unjust enrichment received by Defendants as a result of their conduct as described in this Complaint, including the disgorgement of any revenues and profits;

(4)     For an accounting to validate and confirm the amount of all unjust enrichment received by Defendants as a result of their conduct as described in this Complaint;

(5)     For an award of punitive or exemplary damages;

(6)     For attorneys' fees;

(7)     For prejudgment interest on all amounts claimed;

(8)     For costs of suit incurred herein; and,

(9)     For such other and further relief, including any statutory relief, as the Court deems just and proper.

LITTLER MENDELSON, P.C.
50 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

FIRST AMENDED COMPLAINT

1    Dated: May 31, 2019

2

3                                              /s/ Benjamin A. Emmert
                                               BENJAMIN A. EMMERT
4                                              LITTLER MENDELSON, P.C.
                                               Attorneys for Plaintiff
5                                              JLT SPECIALTY INSURANCE SERVICES INC.

6

7

8    FIRMWIDE:164672516.1 059121.1000

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LITTLER MENDELSON, P.C.
30 W. San Fernando, 7th Floor
San Jose, CA 95113.2303
408.998.4150

FIRST AMENDED COMPLAINT