1  SEAN E. O'DONNELL (SBN 2907186)
   PATRICK M. JOHNSON (SBN 5419221)
2  DANIEL A. FIELD (SBN 5533526)
   HERRICK, FEINSTEIN LLP
3  Two Park Avenue
   New York, NY 10016
4  Telephone: (212) 592-1545
   Facsimile: (212) 545-3410
5  Email: sodonnell@herrick.com - Appearance *pro hac vice*
          pjohnson@herrick.com - Appearance *pro hac vice*
6         dfield@herrick.com - Appearance *pro hac vice*

7  STEVEN L. FRIEDLANDER (SBN 154146)
   JULIAN PARDO DE ZELA (SBN 246496)
8  TATYANA SHMYGOL (SBN 267104)
   SV EMPLOYMENT LAW FIRM PC
9  160 Bovet Road, Suite 401
   San Mateo, CA  94402
10 Telephone:     (650) 265-0222
   Facsimile:     (650) 265-0223
11 Email:         sfriedlander@svelf.com
                  julian.pardo.de.zela@svelf.com
12                tshmygol@svelf.com

13 Attorneys for Defendants
   GARY PESTANA, SARAH SHERMAN
14 DUSTIN SMITH and RAMY MORCOS

15
                    UNITED STATES DISTRICT COURT
16
                    NORTHERN DISTRICT OF CALIFORNIA
17
                    SAN FRANCISCO DIVISION
18

| | |
|---|---|
| JLT SPECIALTY INSURANCE SERVICES INC., a Delaware corporation, | Case No. 3:19-cv-02427 |
| Plaintiff, | **DEFENDANTS' NOTICE OF MOTION AND MOTION TO COMPEL PRODUCTION OF DOCUMENTS AND FURTHER RESPONSES TO SPECIAL INTERROGATORIES AND FOR A PROTECTIVE ORDER; MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT THEREOF** |
| v. | |
| GARY PESTANA, an individual; SARAH SHERMAN, an individual; DUSTIN SMITH, an individual; and RAMY MORCOS, an individual, | |
| Defendants. | Date:  September 6, 2019<br>Time:  9:00 a.m.<br>Dept:  Courtroom 7<br>Judge: Hon. Maxine M. Chesney |
| | Complaint Filed: May 3, 2019<br>Trial Date: Not Set |

# TABLE OF CONTENTS

Page

MEMORANDUM OF POINTS AND AUTHORITIES ..................................................................... 1

    I.     STATEMENT OF ISSUES TO BE DECIDED ............................................................ 1

    II.    INTRODUCTION ........................................................................................................ 2

    III.   PROCEDURAL HISTORY.......................................................................................... 3

    IV.   LEGAL STANDARDS ................................................................................................ 6

    V.    ARGUMENT ................................................................................................................ 7

        A.   JLT Should Be Required to Respond to RPDs and SPIs Concerning Nallen ............................................................................................................... 7

        B.   JLT Should be Required to Respond to RPDs and SPIs Concerning Pochron/TransPerfect ................................................................................... 8

        C.   JLT Has Unreasonably Objected to Defendants' RPDs and Should be Required to Supplement its Production ............................................................. 10

        D.   JLT has Unreasonably Failed to Respond to SPI No. 4.................................... 12

    VI.   DEFENDANTS ARE ENTITLED TO A PROTECTIVE ORDER..................................... 11

CONCLUSION.................................................................................................................................. 14

i

**DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF**     CASE NO. 3:19-cv-02427 MMC

# TABLE OF AUTHORITIES

**Page(s)**

**Federal Cases**

*Blast Motion, Inc. v. Zepp Labs, Inc.*,
　2015 WL 12564315 (S.D. Cal. Dec. 2, 2015) ................................................................... 2, 8

*Doe v. AT & T W. Disability Benefits Program*,
　2012 WL 1669882 (N.D. Cal. May 14, 2012) ....................................................................... 9

*Goodrich Corp. v. Emhart Indus., Inc.*,
　2005 WL 6440828 (C.D. Cal. June 10, 2005) .................................................................... 2, 8

*L.A. Printex Indus., Inc. v. Target Corp.*,
　2008 WL 11343350 (C.D. Cal. Mar. 4, 2008) ..................................................................... 2, 8

*Loop AI Labs Inc v. Gatti*,
　2015 WL 9269758 (N.D. Cal. Dec. 21, 2015) .............................................................. 3, 12, 13

*Myrio Corp. v. Minerva Network Inc.*,
　2001 U.S. Dist. LEXIS 10461 (N.D. Cal. Apr. 4, 2001) ............................................... 3, 12, 13

*RMI Ins. Servs. v. AMCO Ins. Co.*,
　2014 U.S. Dist. LEXIS 194695 (C.D. Cal. Aug. 20, 2014) ..................................................... 9

*Rolex Watch USA v. Watch Empire LLC*,
　2015 WL 12776593 (C.D. Cal. April 28, 2015) ...................................................................... 9

*Stella Sys., LLC v. MedeAnalytics, Inc.*,
　2015 WL 1870052 (N.D. Cal. Apr. 22, 2015) ......................................................................... 8

*Systems Am., Inc. v. Softline, Inc.*,
　1996 U.S. Dist. LEXIS 22415 (N.D. Cal. Oct. 30, 1996) .............................................. 3, 13, 14

*Waymo LLC v. Uber Technologies, Inc.*,
　2017 WL 6501798 (N.D. Cal. Dec. 15, 2017) ........................................................................ 9

**State Cases**

*Advanced Modular Sputtering, Inc. v. Superior Court*,
　132 Cal. App. 4th 826 (2005) ................................................................................................ 12

*Perlan Therapeutics, Inc. v. Superior Court*,
　178 Cal. App. 4th 1333 (2009) .................................................................................. 3, 12, 13

**State Statutes**

California Code of Civil Procedure § 2019.210 ............................................................ 2, 3, 12, 13, 14

ii

**DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF**　　CASE NO. 3:19-cv-02427 MMC

**TABLE OF AUTHORITIES (CONT'D)**

**Page(s)**

**Rules**

Federal Rules of Civil Procedure
    26 ....................................................................................................................................... 9, 11
    26(b) ......................................................................................................................................... 6
    26(b)(1) ................................................................................................................................. 6, 7
    26(f) .......................................................................................................................................... 9
    33 ............................................................................................................................... 2, 7, 8, 11
    33(a)(1) ................................................................................................................................. 7, 8
    33(b) ......................................................................................................................................... 6
    34 ....................................................................................................................................... 2, 7, 8
    34(a) .................................................................................................................................. 7, 8, 9
    37(B) ........................................................................................................................................ 7

**TO DEFENDANT AND HIS ATTORNEY OF RECORD:**

PLEASE TAKE NOTICE that a hearing on Defendants' Motion to Compel Production of Documents and Further Responses to Special Interrogatories and for a Protective Order (the "Motion") will take place on September 6, 2019 at 9:00 a.m., or as soon thereafter as the matter may be heard, in the courtroom of the Honorable Maxine M. Chesney, located at Courtroom 7, 19th Floor, 450 Golden Gate Avenue, San Francisco, CA 94102.

Defendants hereby move pursuant to Rules 33, 34, and 37 of the Federal Rules of Civil Procedure

- to compel Plaintiff to produce, within 10 days from the Court's order on this Motion, all documents responsive to Defendants' Requests for Production Nos. 1-15 related to Stephanie Nallen, Defendants' Requests for Production Nos. 1-14 related to Joseph Pochron, and Defendants' Requests for Production Nos. 1, 2, 4, 9, 11-15, 18-19, 23-27, 29 and 32-33;

- to compel Plaintiff to provide responses, within 10 days from the Court's order on this Motion, to Defendants' Special Interrogatories Nos. 1-6 related to Stephanie Nallen, Defendants' Special Interrogatories 1-10 related to Joseph Pochron, and Defendants' Special Interrogatory No. 4; and

- for a protective order prohibiting Plaintiff from conducting discovery until it has complied with its obligation to identify its purported trade secrets with reasonable particularity.

This Motion is based on this Notice, the Memorandum of Points and Authorities, the Declaration of Sean E. O'Donnell, the Declaration of Patrick M. Johnson, the Statement pursuant to Local Rule 37-2, and all papers in the Court's file.

## MEMORANDUM OF POINTS AND AUTHORITIES

**I.  STATEMENT OF ISSUES TO BE DECIDED**

1) Whether Defendants are entitled to the production of documents and responses to special interrogatories relating to information provided to and relied upon by Plaintiff's employee Stephanie Nallen in connection with Ms. Nallen's sworn declaration submitted in support of Plaintiff's application for a temporary restraining order.

1

**DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF**   CASE NO. 3:19-cv-02427 MMC

2) Whether Defendants are entitled to the production of documents and responses to special interrogatories relating to information provided to and relied upon by Plaintiff's agent and retained expert Joseph Pochron in connection with Mr. Pochron's sworn declaration submitted in support of Plaintiff's application for a temporary restraining order.

3) Whether Defendants are entitled to the production of documents and response to a special interrogatory relating to, *inter alia*, documents and communications tending to show that Defendants have neither misappropriated nor used Plaintiff's alleged trade secrets.

4) Whether Defendants are entitled to a protective order preventing Plaintiff from taking discovery as to Plaintiff's trade secrets allegedly within Defendants' control until Plaintiff has adequately identified its trade secrets in compliance with California Code of Civil Procedure Section 2019.210.

## II. INTRODUCTION

Despite seeking the extraordinary remedy of a preliminary injunction, plaintiff JLT Specialty Insurance Services, Inc. ("JLT") has flatly refused to honor its most basic discovery obligations. JLT's motion for injunctive relief relies heavily upon the sworn declarations of (i) JLT's employee, Stephanie Nallen ("Nallen"), and (ii) JLT's agent and retained expert, Joseph Pochron ("Pochron"). Yet, incredibly, JLT refuses to respond to discovery demands and special interrogatories concerning Nallen and Pochron, contending that they are "non-parties." This is a plain violation of JLT's discovery obligations under Fed. R. Civ. P. 33 and 34, which require JLT to produce documents and provide information within its "possession, custody or control" including information and materials within the possession of JLT's agents and employees. *L.A. Printex Indus., Inc. v. Target Corp.*, 2008 WL 11343350, at *1 (C.D. Cal. Mar. 4, 2008); *Goodrich Corp. v. Emhart Indus., Inc.*, 2005 WL 6440828, at *3 (C.D. Cal. June 10, 2005); *Blast Motion, Inc. v. Zepp Labs, Inc.*, 2015 WL 12564315, at *2 (S.D. Cal. Dec. 2, 2015).

JLT's noncompliance extends beyond Nallen and Pochron. In response to Defendants' comprehensive document demands seeking documents and information necessary to defend against JLT's demand for injunctive relief, JLT has produced ***a single PDF, without any metadata, consisting of only 201 pages*** (the bulk of which are form agreements and JLT's employee handbook).[1] JLT views this meager production as having satisfied its discovery obligations. Not so. As itemized below, in

---

[1] Contrastingly, Defendants have produced 51,968 pages of documents.

2

**DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF**   CASE NO. 3:19-cv-02427 MMC

addition to the missing Nallen and Pochron materials, JLT is wrongfully refusing to produce a horde of documents and information directly relevant to its claims.

Lastly, JLT has failed to provide Defendants with a Code of Civil Procedure section 2019.210 statement that sufficiently identifies with "reasonable particularity" the purported trade secrets allegedly misappropriated by Defendants (as required by law before a party may take discovery as to an alleged trade secret). Instead, JLT's 2019.210 statement contains impermissibly broad, categorical descriptions such as (i) "[i]nformation pertaining to JLT customers and prospective customers," (ii) "[i]nformation regarding JLT's customers and prospective customer contacts," (iii) "[i]nformation regarding JLT's customer and prospective customer contracts and prospective customers," and (iv) "[i]nformation regarding JLT's products and services for its customers and prospective customers." These open-ended descriptions are woefully deficient because they fail to provide the requisite specificity as to the alleged trade secrets necessary for Defendants to adequately prepare their defense. *See Loop AI Labs Inc v. Gatti*, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015); *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 (2009) (holding broad "catch-all" language as impermissible for a 2019.210 statement); *Myrio Corp. v. Minerva Network Inc.*, 2001 U.S. Dist. LEXIS 10461, at *1-3 (N.D. Cal. Apr. 4, 2001). Indeed, this Court has expressly held that designations seeking "information identifying plaintiff's current and prospective customers," "billing information," and "information relating to pricing strategies" are insufficient because they "conceivably include[] every non-technical aspect of plaintiff's business" and are thus "extremely broad." *See Systems Am., Inc. v. Softline, Inc.*, 1996 U.S. Dist. LEXIS 22415, at *1-3 (N.D. Cal. Oct. 30, 1996).

JLT, accordingly, at a minimum, should be compelled to rectify its deficient 2019 statement and produce the responsive documents and information before this case proceeds further.

### III.  PROCEDURAL HISTORY

On May 3, 2019, JLT filed the instant suit against Defendants for breach of contract, state and federal trade secret misappropriation, and violations of the California Penal Code. (*See* ECF No. 1, the "Complaint"). Principally, JLT alleges that Defendants: (1) unlawfully accessed JLT's computer systems and downloaded JLT's confidential, proprietary and/or trade secret information (the "Trade Secret Information"); (2) unlawfully used the Trade Secret Information to compete with JLT; and (3) failed to

return information and documents belonging to JLT in violation of purported contractual obligations.

Nine days later, on May 12, 2019, JLT filed a Motion for Temporary Restraining Order, Preliminary Injunctive Relief and Expedited Discovery (the "TRO Motion"). (*See* ECF No. 9). In support of the TRO Motion, JLT included declarations from, *inter alia*: (i) Stephanie Nallen, who identified herself as JLT's Senior Human Resources Business Partner (the "Nallen Decl.", ECF No. 13 at ¶ 1); and (ii) Joseph Pochron, who identified himself as President of Forensic Technology and Consulting of TransPerfect Legal Solutions and further declared that TransPerfect Legal Solutions ("TransPerfect") was retained by JLT to conduct forensic computer investigation services on certain electronic devices issued to each Defendant by JLT (the "Pochron Decl.", ECF No. 11 at ¶ 2-3).

On May 14, 2019, counsel for the parties participated in a telephonic conference with the Court in connection with the TRO Motion (the "May 14 Conference"). (*See* July 16 Declaration of Patrick Johnson ("Johnson Decl.") Ex. 1). During the May 14 Conference, the Court reserved decision on JLT's request for a TRO and invited the parties to confer on, among other things, a stipulated discovery and briefing schedule for a preliminary injunction hearing. (*Id.* at 36:12–37:10). On that same day, following Defendants' multiple requests, JLT provided its 2019.210 statement (the "2019.210 Statement"). (Johnson Decl. Ex. 2).

On May 24, 2019, the Court denied JLT's TRO application. (Johnson Decl. Ex. 3).

Pursuant to an informal agreement between JLT and Defendants, on May 24, 2019, Defendants served their Requests for Production of Documents (the "RFPs") and Special Interrogatories (the "SPIs") upon JLT. (Johnson Decl. Exs. 4 and 5). JLT similarly served its Requests for Production of Documents ("JLT's RFPs") and Special Interrogatories ("JLT's SPIs") upon all four Defendants.

On May 31, 2019, the parties submitted a Joint Stipulation with Proposed Order (the "Joint Stipulation"). In the Joint Stipulation, the parties agreed to (i) exchange Requests for Production of Documents and Special Interrogatories by May 24, 2019; (ii) provide responses and objections to the Requests for Production of Documents and Special Interrogatories by June 4, 2019; and (iii) produce responsive documents by June 14, 2019. After filing the Joint Stipulation, JLT filed its Amended Complaint. (*See* ECF No. 41). On June 3, 2019, the Court So Ordered the Joint Stipulation. (Johnson Decl. Ex. 6). Pursuant to the Joint Stipulation, JLT served its objections and responses to the RFPs (the

"RFP Responses") and SPIs (the "SPI Responses") on June 4, 2019, with Nallen certifying JLT's SPI Responses. (Johnson Decl. Exs. 7, 8 and 9).

On June 7, 2019, Defendants identified numerous deficiencies with JLT's 2019.210 Statement, and invited JLT to cure those deficiencies and produce documents that would enable Defendants to identify, with reasonable particularity, JLT's allegedly misappropriated trade secrets (the "June 7 Email") (Johnson Decl. Ex. 10). Defendants further noted that the June 7 Email should be considered their meet and confer effort, and that further discovery concerning JLT's alleged trade secrets was inappropriate absent a compliant 2019.210 statement. *Id*.

Thereafter, on June 14, 2019, JLT made its first and only production, consisting of a single PDF containing 201 pages (the "JLT Production") (July 16, 2019 Declaration of Sean E. O'Donnell ("O'Donnell Decl.") ¶ 2). Following receipt of the JLT Production, Defendants have diligently pursued an informal resolution of the deficiencies in JLT's production and responses through the following:

1. On June 19, 2019, Defendants made a supplemental production to JLT, informed JLT that Defendants viewed their production as substantially complete, and requested that JLT inform Defendants whether JLT's production, from June 14, 2019, was substantially complete. (the "June 19 Production"). (Johnson Decl. Ex. 11). ***JLT's counsel did not reply.*** (O'Donnell Decl. ¶ 3).

2. On June 20, 2019, counsel for Defendants emailed JLT's counsel, explaining that Defendants viewed JLT's June 14, 2019 production as materially deficient, and again requested that JLT indicate whether their production was substantially complete, or if Defendants could expect a supplemental production. (Johnson Decl. Ex. 12). ***JLT's counsel did not reply.*** (O'Donnell Decl. ¶ 4).

3. On June 21, 2019, Defendants' counsel sent a letter to Plaintiff's counsel concerning the material deficiencies in JLT's June 14, 2019 production (the "June 21 Letter") including JLT's wholesale refusal to produce documents or respond to interrogatories concerning Pochron and Nallen. Defendants requested that JLT either withdraw the objections and produce responsive documents by June 28, 2019, or agree to a meet and confer on June 25, 2019 or June 26, 2019. *Id*. ***JLT's counsel did not reply.*** (O'Donnell Decl. ¶ 5).

4. On June 28, 2019, after ***still having received no reply***, Defendants' counsel emailed JLT's counsel requesting a response to the June 21 Letter, and advising JLT that absent a response, Defendants would have no choice but to seek judicial intervention. (Johnson Decl. Ex. 14).

Finally, on June 30, 2019, JLT responded to Defendants' numerous overtures concerning JLT's deficient discovery responses (the "June 30 L35534") (Johnson Decl. Ex. 15). In the June 30 Letter, JLT reiterated its refusal to respond to discovery concerning Nallen and Pochron/TransPerfect, failed to address Defendants' specific objections to the materially deficient JLT Production, provided no additional information supplementing JLT's 2019.210 Statement (instead insisting that it was compliant), and demanded that Defendants supplement their discovery responses and produce additional documents. *Id.*

Thereafter, on July 2, 2019, the parties conducted a telephonic meet and confer (the "July 2 Meet and Confer"). At the July 2 Meet and Confer, Defendants explained that JLT's objections respecting Pochron and Nallen were improper because they were under JLT's control, and reaffirmed that Defendants' discovery was propounded solely to JLT. (O'Donnell Decl. ¶ 7). Defendants likewise requested that JLT withdraw its objections and produce documents responsive to Defendants' RFPs. JLT replied that it would not supplement or amend its 2019.210 Statement or any of JLT's responses to the RPDs and SPIs. (Johnson Decl. Ex. 16).

On or about July 1, 2019, in response to JLT's's concerns, Defendants served subpoenas upon Pochron (the "Pochron Subpoena") and TransPerfect (the "TransPerfect Subpoena"). (Johnson Decl. Exs. 17 and 18). On or about July 9, 2019, JLT served its objections to the Pochron Subpoena and TransPerfect Subpoena (the "Subpoena Objections") (Johnson Decl. Exs. 19 and 20). On or about July 12, 2019, the parties met and conferred concerning the Subpoena Objections, and JLT indicated that it would not withdraw its objections to the subpoenas. (O'Donnell Decl. ¶ 8).

## IV.  LEGAL STANDARDS

A party is entitled to seek discovery of "any nonprivileged matter that is relevant to any party's claim or defense…" Fed. R. Civ. P. 26(b)(1). "An interrogatory may relate to any matter that may be inquired into under Rule 26(b)." Fed R. Civ. P. 33(b). "A party may serve on any other party a request

within the scope of Rule 26(b): (1) to produce…(A) any designated documents or electronically stored information… or (B) any designated tangible things." Fed. R. Civ. P. 34(a).

"A party seeking discovery may move for an order compelling an answer, designation, production, or inspection. This motion may be made if…(iii) a party fails to answer an interrogatory submitted under Rule 33; or (iv) a party fails to produce documents or fails to respond that inspection will be permitted—or fails to permit inspection—as requested under Rule 34." Fed R. Civ. P. 37(B).

## V.     ARGUMENT

### A.     JLT Should Be Required to Respond to RPDs and SPIs Concerning Nallen

Emblematic of JLT's discovery gamesmanship is its refusal to respond to RPDs and SPIs concerning Nallen. There can be little doubt that JLT has control over Nallen. She is a JLT employee. She submitted a sworn declaration supporting JLT's application for (i) the TRO, (ii) expedited discovery and (iii) a preliminary injunction. Per the Joint Stipulation, JLT has agreed to produce Nallen for a deposition. And Nallen has even certified JLT's SPI Responses. Given her integral role thus far, the documents and information concerning Nallen (or in her possession) are plainly relevant and necessary to the Defendants' defense. Nallen's thirteen-page declaration not only provides detailed information about JLT's alleged methods for protecting its confidential and proprietary information, but also sets forth specific representations about defendants Gary Pestana, Sarah Sherman, Dustin Smith, and Ramy Morcos, including the circumstances of their return of electronic devices to JLT, their job responsibilities, the clients they serviced, and the purported conditions of their employment with JLT. (*See* Nallen Decl. ¶¶12-39). Furthermore, in twenty detailed paragraphs, Nallen sets forth the purported "unlawful conduct" committed by these Defendants, as well as her personal involvement in the investigation conducted by JLT. (*Id*., ¶¶ 40-60).

Yet JLT is refusing to respond to any discovery concerning Nallen on the basis that she is not a party to this litigation.[2] This flimsy objection seemingly hinges upon a subheading within the RPDs and

---

[2] *See* Johnson Decl. Ex. 7 at 24-35 and Ex. 8 at 20-24 (objecting to RPDs and SPIs on basis that RPDs and SPIs were "propounded on a non-party, Stephanie Nallen, and [are] therefore improper pursuant FRCP 34(a) [and FRCP 33(a)(1).]" Plaintiff has also objected to all of Defendants' RPDs and SPIs, including those concerning Nallen, on the basis that they were signed by Sean E. O'Donnell before his *pro hac vice* motion was granted. That objection is likewise without merit, as Mr. O'Donnell has since been admitted *pro hac vice*, and, in any event, Plaintiff has waived its objection by selectively responding to RPDs and SPIs. Nevertheless, in an abundance of caution, Defendants re-served their identical discovery on JLT on July 8, 2019.

7

**DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF**     CASE NO. 3:19-cv-02427 MMC

SPIs, stating that certain requests are "to" Nallen—all while ignoring express language on the very first page of each demand, plainly stating that JLT is the sole responding party: "RESPONDING PARTY: JLT SPECIALTY INSURANCE SERVICE, INC." (*See* Johnson Decl. Ex. 7 at 1 and Ex. 8 at 1). Defendants did not serve the RPDs or the SPIs upon Nallen. Nor were the RPDs intended to be the equivalent of a subpoena. The subheadings styled "to" Nallen were inserted simply for ease of reference and to indicate the likely custodian of documents or information being requested (a fact which Defendants' counsel reaffirmed at the July 2 Meet and Confer). JLT has no legal basis to refuse to respond to discovery demands concerning Nallen.

Again, it is well-established that under Fed. R. Civ. P. 34, "a party must produce or permit inspection of documents responsive to a request for production of documents when such documents are in the party's 'possession, custody or control.'" *L.A. Printex Indus., Inc. v. Target Corp.*, 2008 WL 11343350, at *1 (C.D. Cal. Mar. 4, 2008). Under Fed. R. Civ. P. 33, a "corporation responding to interrogatories must provide not only the information contained in its own files and possessed by its own employees, but also all information under its control." *Goodrich Corp. v. Emhart Indus., Inc.*, 2005 WL 6440828, at *3 (C.D. Cal. June 10, 2005). Employers such as JLT have control over their employees for the purposes of a motion to compel. *See Blast Motion, Inc. v. Zepp Labs, Inc.*, 2015 WL 12564315, at *2 (S.D. Cal. Dec. 2, 2015).

**B.  JLT Should be Required to Respond to RPDs and SPIs Concerning Pochron/ TransPerfect**

JLT has also unreasonably refused to produce documents and respond to interrogatories concerning its agent and retained expert Pochron, based upon the same objection that Pochron is a "non-party."[3] But, again, JLT is required to produce documents and provide responsive information to the extent that such information is within its "control." And the concept of "control" has been "construed broadly by the courts as the legal right, authority, or practical ability to obtain the materials sought on demand." *Stella Sys., LLC v. MedeAnalytics, Inc.,* 2015 WL 1870052, at *3 (N.D. Cal. Apr. 22, 2015). This includes all responsive documents "kept on [JLT's] behalf by their affiliated entities, employees,

---

[3] *See* Johnson Decl. Ex. 7 at 35-43 and Ex. 8 at 24-30 (objecting to RPDs and SPIs on basis that RPDs and SPIs were "propounded on a non-party, Joseph Pochron[/TransPerfect], and [are] therefore improper pursuant FRCP 34(a) [and FRCP 33(a)(1).]"

8

consultants, etc., in California and elsewhere." *See Rolex Watch USA v. Watch Empire LLC*, 2015 WL 12776593, at *2 (C.D. Cal. April 28, 2015); *see also RMI Ins. Servs. v. AMCO Ins. Co.*, 2014 U.S. Dist. LEXIS 194695, at *4 (C.D. Cal. Aug. 20, 2014) ("When the person in possession of the items may fairly be identified as an extension of the litigant—say, as an agent of or professional hired by the litigant—then the litigant properly may be compelled to obtain those materials from that source"); *Waymo LLC v. Uber Technologies, Inc.*, 2017 WL 6501798, at *10 (N.D. Cal. Dec. 15, 2017) ("Subject to the Rule 26 parameters on all discovery, a party is entitled to request documents in another party's 'possession custody or control.' Fed. R. Civ. P. 34(a). A party responding to such request must 'then make a reasonable inquiry to determine whether the responsive documents exist[.] . . . That requirement carries with it 'an affirmative duty to seek that information reasonably available to it from its employees, agents, or others subject to its control.'") Likewise, a responding party may not properly object to interrogatories by asserting the interrogatories call for information from non-parties, if the requested information is "readily obtainable" from the non-party. *Doe v. AT & T W. Disability Benefits Program,* 2012 WL 1669882, at *2 (N.D. Cal. May 14, 2012).

As with Nallen, Pochron's important role in this litigation and JLT's control of Pochron are undeniable: Pochron was retained by JLT to conduct a forensic investigation of the Defendants' electronic devices and files allegedly accessed by Defendants, Pochron submitted a declaration in support of JLT's application for a TRO (who, with Nallen, were the only non-attorneys to submit declarations), and JLT agreed to make Pochron available for a deposition. And yet JLT is refusing to respond to discovery concerning Pochron based upon the same objection JLT asserts for Nallen, i.e., that the discovery was purportedly propounded on a "non-party." Moreover, despite Defendants' efforts to explain that the RPDs and SPIs were clearly propounded on just one party (JLT), and Defendants' willingness to—in a belt and suspenders approach—serve subpoenas upon Pochron and TransPerfect,[4] JLT has continued to stonewall Defendants' discovery efforts relating to Pochron's investigation and his

---

[4] Without conceding any of their rights, in an effort to mitigate any concern that JLT might have about discovery related to a non-party, Defendants served the Pochron Subpoena and the TransPerfect Subpoena. Unsurprisingly, JLT has objected that such subpoenas were premature and not otherwise authorized by the Joint Stipulation. Remarkably, JLT said it will maintain the same objection following the party's Rule 26(f) conference, which took place on July 12, 2019. (O'Donnell Decl. ¶ 8).

findings. JLT's "agreement" to make Pochron available for a deposition—while refusing to produce documents and information concerning his investigation—is manifestly improper.

### C.     JLT Has Unreasonably Objected to Defendants' RPDs and Should be Required to Supplement its Production

JLT's gamesmanship does not end with Nallen and Pochron. JLT has asserted a host of other frivolous objections and produced only a single PDF, without any metadata, containing a mere 201 pages of documents. (O'Donnell Decl. ¶ 2). The JLT Production consists primarily of JLT's 62-page handbook and various form agreements signed by JLT and Defendants. The remainder of JLT's paltry production merely consists of: (i) Defendants' signed acknowledgements of receipt of JLT's employee handbook; (ii) post-termination correspondence from JLT's in-house and outside counsel; (iii) a *form* non-disclosure agreement between JLT and its customers;[5] (iv) 17 pages of Broker of Record letters or similar correspondence; and (v) six email strings (consisting of a mere 15 pages of correspondence between or concerning former JLT customers). This meager production pales in comparison to the 51,968 pages of documents produced by Defendants and is the byproduct of JLT's unreasonable objections to legitimate discovery demands.

First, JLT has improperly objected to producing numerous documents germane to its request for injunctive relief, including documents concerning JLT's forensic review of Defendants' company-issued electronic devices. JLT has flatly refused to provide documents relating to JLT's forensic review of each Defendants' company-issued devices (RPD 27).  And JLT has unreasonably limited its response to Defendants' request for documents or communications related to the files allegedly accessed by Defendants prior to their termination of employment with JLT (RPD 29) to only a generic "list" of the allegedly accessed files. JLT's outright refusal to produce this critical information, coupled with JLT's refusal to provide *any* information concerning Pochron's forensic review, *see* Section IV.B, *supra*, greatly prejudices Defendants' ability to prepare for the preliminary injunction hearing and the associated depositions.

---

[5] RFP 4 requests all agreements between JLT and its customers relating to the confidential treatment of information provided by JLT to its customers. RFP 4 was propounded in order to determine the extent to which Plaintiff views the information it provides to customers as confidential, and steps taken, if any, to protect it. A *form* agreement provides little if any insight into this critically important issue. Defendants are left to guess which, if any, customers actually entered into such agreements (or were even asked to enter into such an agreement) and what the contents of the agreement might be.

10

**DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF**          CASE NO. 3:19-cv-02427 MMC

Second, despite JLT's agreement to produce documents responsive to RPDs 15, 18, 23, 24, 25, and 26 (which sought, *inter alia*, basic documents relating to (i) Marsh's acquisition of JLT (the trigger for the mass exodus of JLT customers and employees), (ii) Defendants' contact lists at the time of hire by JLT, and (iii) production and commission reports routinely provided to Defendants), the JLT Production is devoid of *any* documents that are responsive to those requests.

Here is yet another example of JLT's discovery non-compliance. The *sole* document JLT identified in its pleading as being allegedly downloaded by the Defendants was Pestana's "My Contacts" file. Yet JLT has failed to produce any documents or communications relating to this alleged event, including the file allegedly downloaded. In contrast, *Defendants* produced a document (responsive to RPD 23) demonstrating that, prior to his hire by JLT, Pestana was provided *instructions by JLT on how to download his contacts from his prior employer*, Marsh, before resigning and joining JLT. (Johnson Decl. Ex. 21).

Third, despite JLT's professed agreement to produce documents in response to RPDs 1, 2, 7, 9, 11, 12, 13, 18, 19, 32, and 33, JLT's production is devoid, or nearly devoid, of such documents and communications. These requests sought, in part, all documents and communications concerning the termination of Defendants' employment with JLT, along with documents and communications between either the Defendants and JLT or the Departing Customers. While JLT produced a few responsive documents, they were largely limited to Broker of Record letters (or similar communications), correspondence from JLT's inhouse and outside counsel, and a single email chain (that appears to have been inadvertently sent to the Defendants' prior email address with JLT) and did not include responsive documents Defendants know exist. JLT has failed to put forth any explanation as to why so few responsive documents appear in the JLT Production (and whether JLT has in fact engaged in a reasonable search for documents, as required by the Federal Rules of Civil Procedure), despite the fact that such documents are crucial to Defendants' defense in this action, as they too would tend to show that the Departing Customers left JLT for reasons unrelated to any "use" of allegedly misappropriated trade secrets.

### D.   JLT has Unreasonably Failed to Respond to SPI No. 4

Per Fed. R. Civ. P. 26 and 33, Defendants are entitled to discover information "relevant" to their

11

DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF         CASE NO. 3:19-cv-02427 MMC

defenses. JLT has objected to SPI 4 (requesting that JLT identify "every Departing Customer who was previously serviced by any Defendant prior to that Defendant's employment with JLT, including, without limitation, employment with Marsh & McLennan") on the basis of relevance, and refused to provide a response. Contrary to JLT's objections, the information requested by SPI 4 is relevant because it will demonstrate that certain Departing Customers worked with the Defendants prior to their joining JLT, and that their decision to leave JLT following Defendants' resignations was unrelated to the use of any trade secret information. JLT lacks a reasonable basis to decline to provide this information, and JLT should be compelled to provide an answer to SPI 4.

## VI. DEFENDANTS ARE ENTITLED TO A PROTECTIVE ORDER

In addition to JLT's failure to respond to the RPDs and SPIs in good faith, JLT is likewise impermissibly attempting to take discovery as to their alleged trade secrets despite serving (and refusing to amend) its patently insufficient 2019.210 Statement. (Johnson Decl. Ex. 2). Code of Civil Procedure section 2019.210 ("Section 2019.210") requires a party suing for misappropriation of its trade secrets to identify with "reasonable particularity" the purported trade secrets which allegedly have been misappropriated "before commencing discovery relating to the trade secret[s]." Here, despite overtures from Defendants requesting that JLT amend its 2019.210 Statement to comply with Section 2019.210's requirements, JLT has refused, while erroneously claiming that its 2019.210 Statement adequately identifies the allegedly misappropriated trade secrets at issue in this action. Not so.

Courts in this District and across California have found that broad, categorical requests such as those found in JLT's 2019.210 Statement do not comply with Section 2019.210, and that allegedly misappropriated trade secrets must be identified with reasonable particularity before a party can take discovery relating to those trade secrets. *See Advanced Modular Sputtering, Inc. v. Superior Court*, 132 Cal. App. 4th 826, 835 (2005); *Loop AI Labs Inc v. Gatti*, 2015 WL 9269758, at *4 (N.D. Cal. Dec. 21, 2015); *Perlan Therapeutics, Inc. v. Superior Court*, 178 Cal. App. 4th 1333, 1350 (2009); *Myrio Corp. v. Minerva Network Inc.*, 2001 U.S. Dist. LEXIS 10461, at *1-3 (N.D. Cal. Apr. 4, 2001).

JLT's 2019.210 Statement is woefully deficient. It lists nine alleged trade secrets JLT claims were misappropriated, each of which contains only a vague, non-specific description:

- Topic 1 refers to: "Information pertaining to JLT customers and prospective customers, including lists of customers and prospective customers."

12

- Topic 2 refers to: "Information regarding JLT's customers and prospective customer contacts."
- Topic 3 refers to: "Information regarding JLT's customer and prospective customer contracts and prospective customers."
- Topic 4 refers to: "Information regarding JLT's products and services for its customers and prospective customers."
- Topic 5 refers to: "JLT's customer account information, including sales data, contract terms, contact termination dates, information regarding products or services purchased or contracted for, and information regarding the unique needs of customers."
- Topic 6 refers to: "Information regarding contracts and pricing arrangements with customers, including sales history, trends, and related information concerning customer preferences, and other detailed information concerning buying trends."
- Topic 7 refers to: "JLT's pricing information."
- Topic 8 refers to: "Information regarding JLT's specific pricing arrangements and proposals."
- Topic 9 refers to: "JLT's marketing and strategic planning documents."

JLT's open-ended descriptions such as "information pertaining" and "including" are impermissibly broad and not compliant with Section 2019.210. *Loop AI Labs*, 2015 WL 9269758, at *4 (holding where "no specific documents that contain trade secrets" are identified, such a statement is considered "vague and lacks the 'reasonable particularity' sufficient to enable Defendants to prepare their defenses"); *Perlan Therapeutics,* 178 Cal. App. 4th at 1350 (holding broad "catch-all" language as impermissible for a 2019.210 statement); *Myrio Corp.*, 2001 U.S. Dist. LEXIS 10461, at *2-3 ("If Plaintiff references a document as setting forth one or more trade secrets, it shall specify precisely which portions of the document describes the trade secret(s)" and must describe all trade secrets in "narrative form").

The court's holding in *Systems America* is instructive. The court held that that a designation seeking "information identifying plaintiff's current and prospective customers," "billing information," and "information relating to pricing strategies" was insufficient as such a designation "conceivably includes every non-technical aspect of plaintiff's business" and was thus "extremely broad." *See Systems Am., Inc.*, 1996 U.S. Dist. LEXIS 22415, at *1-3. These are the *exact* same types of documents that JLT seeks from Defendants, including (i) "information regarding" customers and "prospective customers;" "pricing information;" and "information regarding JLT's specific pricing arrangements." (*See* Johnson Decl. Ex. 2).

13

As in *Systems Am.*, JLT's Section 2019.210 Statement is "extremely broad," "conceivably includes every non-technical aspect of [P]laintiff's business," and should be deemed non-compliant with Section 2019.210's requirements. *See id.* JLT fails to specify any specific documents containing trade secrets, let alone the portions of those documents containing the trade secrets. JLT has taken the position that certain files were misappropriated electronically, and thus can identify those files which form the basis of its claims and produce those documents (under the parties' protective order) in order to modify its deficient Section 2019.210 Statement. JLT has unreasonably refused to do so.

Defendants, accordingly, are entitled to a protective order prohibiting JLT from conducting discovery until it has complied with its Section 2019.210 obligations.

## CONCLUSION

Defendants respectfully request that the Court grant their motion and issue an Order: (1) requiring Plaintiff to promptly produce all documents responsive to Defendants' Requests for Production Nos. 1-15 related to Stephanie Nallen, Defendants' Requests for Production Nos. 1-14 related to Joseph Pochron, and Defendants' Requests for Production Nos. 1, 2, 4, 9, 11-15, 18-19, 23-27, 29 and 32-33; (2) requiring Plaintiff to pr1omptly provide responses to Defendants' Special Interrogatories Nos. 1-6 related to Stephanie Nallen, Defendants' Special Interrogatories 1-10 related to Joseph Pochron, and Defendants' Special Interrogatory No. 4; and (3) prohibiting Plaintiff from conducting discovery until it has complied with its Section 2019.210 obligation to identify its purported trade secrets with reasonable particularity.

Dated: July 17, 2019

Respectfully submitted,

HERRICK, FEINSTEIN, LLP

*/s/ Sean E. O'Donnell*
SEAN E. O'DONNELL
PATRICK M JOHNSON
DANIEL A FIELD

Attorneys for Defendants GARY PESTANA, SARAH SHERMAN, DUSTIN SMITH, AND RAMY MORCOS

Appearance *pro hac vice*

Dated:  July 17, 2019				SV EMPLOYMENT LAW FIRM PC

					By:	*/s/ Tatyana Shmygol*
						STEVEN L. FRIEDLANDER
						TATYANA SHMYGOL

					Attorneys for Defendants GARY PESTANA, SARAH SHERMAN. DUSTIN SMITH and RAMY MORCOS

### SIGNATURE ATTESTATION

I hereby attest that all signatories listed above, on whose behalf this motion is submitted, concur in the filing's content and have authorized the filing.

Dated: July 17, 2019				SV EMPLOYMENT LAW FIRM PC


						*/s/ Tatyana Shmygol*
						TATYANA SHMYGOL

					Attorneys for Defendants GARY PESTANA, SARAH SHERMAN, DUSTIN SMITH, AND RAMY MORCOS

---

15

**DEFS' NOTICE OF MOTION AND MOTION TO COMPEL PROD OF DOCS AND FURTHER RESPS TO SPEC ROGS AND A PROTECTIVE ORDER; MPAS IN SUPPORT THEREOF**		CASE NO. 3:19-cv-02427 MMC